IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

UNITED STATES OF AMERICA,   )   CR. NO. 4:22-CR-580
                               )   FLORENCE, SC
                               )   SEPTEMBER 14, 2022
                               )
       VERSUS                 )
                               )
BHAGAVAN MAHAMAYAVI ANTLE,   )
A/K/A KEVIN ANTLE          )
A/K/A DOC ANTLE,            )
                               )
          DEFENDANT.     )
_____)

BEFORE THE HONORABLE THOMAS E. ROGERS, III
UNITED STATES MAGISTRATE COURT JUDGE
BOND MODIFICATION HEARING

APPEARANCES:

FOR THE GOVERNMENT:    DEREK ALAN SHOEMAKE, AUSA
                         UNITED STATES ATTORNEY'S OFFICE
                         401 W EVANS STREET
                         SUITE 222
                         FLORENCE, SC 29501

                         AMY F. BOWER, AUSA
                         UNITED STATES ATTORNEY'S OFFICE
                         151 MEETING STREET
                         SUITE 200
                         CHARLESTON, SC 29401

FOR THE DEFENDANT:     ANDREW MOORMAN, ESQ.
                         MOORMAN LAW FIRM
                         416 EAST NORTH STREET
                         2ND FLOOR
                         GREENVILLE, SC  29601

                         RYAN L. BEASLEY, ESQ.
                         RYAN L. BEASLEY LAW OFFICE
                         416 EAST NORTH STREET
                         GREENVILLE, SC 29601

1  APPEARANCES CONTINUED:

2    COURT REPORTER:           DEBRA R. BULL, RPR, CRR
                               UNITED STATES COURT REPORTER
3                              315 SOUTH MCDUFFIE STREET
                               ANDERSON, SC  29624
4

5
                  STENOTYPE/COMPUTER-AIDED TRANSCRIPTION
6                      *** *** *** *** ***

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

(Whereupon, the hearing commenced at 10:59 a.m.)

1 COURT OFFICER:  All rise.

2 THE COURT:  Yes, sir, Mr. Shoemake.

3 MR. SHOEMAKE:  Yes, Your Honor.  We are here on

4 4:22-580, United States versus Antle.

5 Your Honor, we are here for a Bond Modification

6 Motion that the Government filed, I think, a couple of

7 weeks ago, and it relates to the prior bond you set in

8 this case.  And, obviously, it is my motion, so I am

9 prepared to go forward whenever the Court is ready.

10 THE COURT:  Okay.  Are you ready to go forward?

11 MR. MOORMAN:  We are, Your Honor.

12 THE COURT:  Okay.  All right.  I see Mr. Antle

13 is here in the courtroom with us, as well as his

14 lawyers.

15 MR. BEASLEY:  Yes, Your Honor.

16 MR. SHOEMAKE:  Yes, Your Honor, I will be brief.

17 I laid this out in the motion.  There is really

18 not a whole lot of dispute about what is happening, the

19 question is what to do about it.  As I attached the

20 letter to the Court but, Your Honor, we were recently

21 informed by the USDA that Mr. Antle is attempting to

22 sell the Myrtle Beach Safari Park, which based on the

23 -- the way the USDA licensing work, would inherently

24 mean selling the animals of that park, as well as the

park itself to Sugriva LLC.   This is an LLC that was
created while Mr. Antle was in custody by a person with
ties to Mr. Antle that lives on the compound there,
Ms. York.   As the letter makes clear,  Ms. York would
be effectively the full owner and this would completely
divest Mr. Antle of ownership interest.  In fact,
according to at least Ms. York's lawyers, there is even
a question of whether or not Mr. Antle would even be
employed at that point by the Safari Park.

So,  Your Honor,  I know the defense has filed a
response.   I would just like to address a couple of
things and then sort of dovetail into the reason why we
think the bond should be modified.

Your Honor,  I don't want to get too deep into
the facts that were laid out by the defense, other than
to say we fundamentally disagree with the
characterization of most of them.  This is not a
strawman argument.   The fact is,  we have an
outstanding subpoena to the USDA now,  we are collecting
those records now to turnover to the defense.  I asked
USDA to get us those documents,  so the USDA has an
obligation to let us know documents in possession that
are relevant.   They flagged this for us.   It was
entirely our decision to make this motion.

The only other thing I will say is there is

reference to the FBI lying to a financial institution,
that did not occur, that is beyond the scope of this
hearing, and I can address that with the lawyers later,
but that is entirely not accurate.

So, Your Honor, what we have here is a
defendant that is charged with money laundering. And
specifically, the money laundering charges, as noted in
the indictment and as evidence presented before Your
Honor during the revocation hearing in this case or the
bond detention hearing in this case, that money
laundering was done using both Safari accounts,
accounts tied to the Myrtle Beach Safari and also using
property of the Myrtle Beach Safari. It was, you
know, done there on the property.

Your Honor, he has now since been charged,
since we were last before you on these issues, he has
since been charged with several Lacey Act violations
that involved the trafficking of endangered species to
that park. Specifically, there is at least one
chimpanzee and cheetahs that we have every reason to
believe are still at the Park that are involved in that
case. So, Your Honor, when we found out, not through
defense, but through the USDA that the sale was taking
place, we felt incumbent to step in.

Your Honor, I think two other factual sort of

clarifications or illustrations before I go into sort of
the legal arguments is during the last hearing, we
specifically requested a condition of bond that
Mr. Antle not be allowed to move animals.  Your Honor
made  the point that at this point he had not been
charged with any wildlife trafficking,  this is an issue
we can revisit,  should that become an issue,  so that
is why we have come back because it in fact has become
an issue.  And, again, as far as we can tell by the time
line at that point at least the initial machinations
have been put in place to transfer the Myrtle Beach
Safari Park and the animals over to Ms. York and her
LLC.

Secondly, we have, as noted in the Defendant's
footnote,  given that this is a business that does have
some legitimacy,  we do not accept the position that it
is an entirely legitimate business,  but certainly there
are people who clean pools and things like that that are
not involved in illegal activities,  for those reasons,
the defense came to us asking if we could effectively do
a property swap.  Allow us to put a *lis pendens* on one
of the properties there in the area and in exchange of
that release some of the seed spots.  We agreed to do
that.  At no point in this discussion,  to be fair we
did not ask,  but at no point in this discussion were we

made aware of any attempt to sell the Safari Park. I
think that would have changed our position had we known
that.

Your Honor, with that in mind, we are here
today because the Government seeks that you not allow
Mr. Antle to transfer ownership of the Safari Park and
the animals therein. And we do that for three primary
reasons, Your Honor: First, this Court routinely
enters bond conditions to protect evidence, and the
reason they do that is because it is a violation to
destroy evidence, it is a violation of law to obstruct
justice. And so there is -- it is clear in the statute
that bonds can be set, and one of the conditions can be
not to engage in further legal violation. Destruction
or obstruction of justice and destruction of evidence
are both reasons that the Court could issue a bond. In
this case, Your Honor, we are not dealing, I think it
is very important to make this distinction, we are not
dealing with substitute assets. The law in the Fourth
Circuit is clear, and I have a number of cases I could
cite, that any instrumentality used to facilitate money
laundering is subject to seizure as part of the criminal
conduct. Not as some substitute asset. We have
copious evidence that the Myrtle Beach Safari Park
itself, its grounds, and more importantly its bank

accounts were used to facilitate money laundering. We also now have evidence that the park now currently houses animals that were illegally trafficked. The Lacey Act seizure would allow the Government to seize the park and those animals. So, Your Honor, we have a legitimate right to seize all of those things, and in fact in the interest of sort of discretion, we have not, at this point, asked to seize the animals or that property primarily because we thought it was unnecessary, we didn't expect -- we were hopeful this would not happen, an attempt to transfer ownership.

So again, Your Honor, we think to protect the evidence, I understand the Defendant makes the point here that the Government may have some ability to set aside the transfer to still reach to the assets, but nonetheless, adding that extra layer creates an entire other legal obstacle to get to the property. We think that is the actual fundamental drive as to why this happened. We believe that is why the LLC was set up while Mr. Antle was on bond, and we believe that is why it is being transferred now to keep the Government one farther step away from being able to seize these animals or that property. So that is one reason, Your Honor.

The second reason, as the defense also notes, is dealing with the flight risk. It is still our concern,

as the Virginia trial approaches in October, that
Mr. Antle is a flight risk.   One of the large reasons
made as to why he was not a flight risk before Your
Honor was this is a businessman who owns a large,
growing concern in Myrtle Beach.   If he is able to
divest himself of this with according to at least
Ms. York's attorney having not even maybe even being an
employee,  his ties to the community, and this community
specifically, effectively vanish.   I am sure his lawyer
will say he plans to be involved, but the reality is,
the black and white letter from Ms. York says,  we
understand he is under indictment,  he will have no role
in the management of this thing,  and he will probably
not even be an employee or may not even be an employee.
We think,  Your Honor,  very much so a restriction on
the transfer is important because without that we think
the Defendant becomes a greater flight risk than he may
already be.

Your Honor,  I think the last point, and again
there is not much more for us to say,  I think the last
point here is that we are hopeful to do this because it
seems to be the cleanest option,  it fits pretty
squarely within the ability of the Court to set a bond.
We certainly have the ability to file a civil seizure
order and then seek an injunction from the District

Court to prevent this transfer or seek an outright seizure.   We would prefer this method because it keeps everything in place,  prevents the evidence from being destroyed, and arguably keeps Mr. Antle here while we continue these proceedings.

So,  that is why we are before the Court and would seek in addition that he not be allowed to transfer the Safari Park and specifically any animal under the Endangered Species Act.   And if we had to be even more specific,  I guess we could say do not transfer the Safari Park or any chimpanzees or cheetahs as those are the two specific type of animals listed in the Indictment.   We suspect more may be coming,  but as of right now,  we have cheetahs and chimpanzees,  we are not saying every chimpanzee and every cheetah is there illegally,  but in order for us to know which ones he is transferring,  we would have to go and actually evaluate those animals to make sure it is not the one illegally trafficked.   So,  we believe a bond condition,  a very reasonable bond condition would be not to allow the transfer of the the Safari Park and not to allow the transfer of animals listed in the in Endangered Species Act.   Or if the Court wants to be more specific, not to allow the transfer of chimpanzees and cheetahs.   Unless the Court has any questions,  that is all the Government

1  has.

2         THE COURT:   Okay.   Let me hear from the defense.

3         MR. MOORMAN:   Your Honor,  may it please the

4  Court,  I will respond to some of what he said in just a

5  second.   I want to start with this, and at the risk of

6  appearing facetious, when he called the case,  he called

7  the case "United States versus Mr. Antle,"  in our

8  opinion,  this case, as it stands before Your Honor

9  today is more properly titled, USDA versus Mr. Antle.

10  We are here solely because of the USDA actions as a

11  catalyst to try to prevent the proper permitting and

12  licensing of the Myrtle Beach Safari.   By his own

13  pleadings,  the Government acknowledges that we are here

14  because USDA passed information along relating to

15  perfectly lawful activity and this is something that,

16  and Your Honor has been doing it longer than I have,

17  but I don't recall a time when the Government had moved

18  the Court to add restrictions to a bond and do not

19  allege any bond violations of any kind.   We are before

20  Your Honor, and the Government does not allege any

21  failures on Mr. Antle's part to comply with any

22  conditions of bond that Your Honor has set.   I think

23  that is very,  very important.

24         The other thing that I think is very, very

25  important is this,  or many things,  but there are two

applications pending before the USDA right now:  One is
a renewal for Mr. Antle's license; one is an application
for a new license for Sugriva.   Both of these are
pending before the USDA.   Mr. Antle for decades has
communicated with the USDA seamlessly to have his permit
renewed,  seamlessly,  right.   This year everything
changes.   They try to schedule appointments with USDA
for inspections,  USDA cancels those appointments,
right.   In speaking with attorneys for Mr. Antle and
Sugriva, who are working through this regulatory piece,
they tell me unequivocally the USDA does not have any
basis to deny either the renewal or the new permit for
Sugriva at this point.   No basis whatsoever.   So,
what happens after this?  The inspection is supposed to
be scheduled for the beginning of the month,  they
cancel,  and then what happens?  We have this case
brought in front of Your Honor in an effort to prevent
these permits from being granted and/or the continuation
of the business,  that is the Myrtle Beach Safari.   And
this is what I think, Your Honor, is utterly important
here.   What is at stake?  The Government seeks to get
an order from Your Honor preventing the transfer of
animals on the endangered species list and the transfer
of the business itself.   That is what they are asking
for.

1        Now Mr. Shoemake is trying to modify it, but

2   that is what they are asking.   Think about this.

3   Right now there are approximately 150 animals on that

4   property at the Myrtle Beach Safari.   Of those, between

5   120 and 130 are on the endangered species list.   Those

6   animals,  their lives literally are dependent on the

7   successful operation of that business,  right.   A

8   business that Mr. Antle has built with his team over

9   decades.   And which Mr. Antle and his team now run very

10  successfully.  But think about this,  a thousand pounds

11  of meet a day, 20 plus employees, vet bills,,

12  infrastructure.  To make all of this go,  that business

13  has got to be successful,  right,  because that is very

14  expensive to make all of that go.   So,  what the

15  Government is seeking from Your Honor is for Your Honor

16  to actively take an interest to control lawful business

17  decisions that my client is perfectly empowered to make,

18  to make that business go and support those animals,

19  right.   And what they are asking for,  Your Honor,  is

20  you to have control to prevent the transfer of 120

21  animals on that property.

22        So,  even, let's say, Mr. Antle believes that it

23  is in the animal's best interest and the Safari's best

24  interest to bring an animal here,  to transfer an animal

25  to the property so he can care for it,  or transfer one

of these animals off the property somewhere else so it
could have maybe a different habitat or something that
would improve that animal's life, the Government wants
Your Honor to say, no. Right.

He references the prior interaction we had on
the record about animal conditions, and this is what I
remember specifically, there was a lot we reviewed on
the record, but I remember specifically when the
Government asked Your Honor to require Mr. Antle to
notify the Court if there was was a birth of an animal,
a death of an animal, if an animal had to go to the
vet, what Your Honor in court identified very aptly,
and the question Your Honor put to Mr. Shoemake is, so,
if that requirement is imposed and the Court receives
that information, what is the Court to do with that?
Right? And now, again Your Honor expressed some concern
over that liability potentially or that level of
intrusion that that would impose on the Court, now the
Government is seeking to get Your Honor to interfere
with critical business decisions that could negatively
impact the financial well-being of the safari, and in
turn literally endanger the lives of animals on the
Safari.

Let me give you just one example how tenuous --
it is a finely-tuned machine built over decades. Let

me give you one example of how tenuous this can be.

Mr. Antle got out on bond.   After he got out on bond,

there were vendors who did not want to conduct business

with him because of the publicity associated with this

case,  right.   One of the problems he encountered is

pools on the property were turning green,  right, which,

in a vacuum, that doesn't seem like a big deal,  right?

There was algae in the pools.   When the pools turn

green,  can't use the pools.   When you can't use the

pools,  his son and other members of the team who swim

with tigers in the pools during the tours can't perform

that part of the tour,  right.   When they can't perform

that part of the tour,  that tour become less appealing

to the public,  warrants less expenditures on the tour.

Just that little hiccup that was caused by this case in

and of itself posed a risk to the financial well-being

to the Safari,  right.   And Mr. Shoemake talks about

how, well, we could seize everything, right.   We could

seize everything as instrumentalities.   So, does

Mr. Shoemake or this Court, I am not being facetious,

does Mr. Shoemake want the Government to be responsible

for the well-being of 120 animals on the endangered

species list that my client has cared for extremely well

for decades?  And by the way,  there is no allegation in

any of this case about any animal mistreatment,  any

negligence on the part of Mr. Antle or any of his staff

for the purpose of caring for these animals.  These

animals are better cared for there better than anywhere

else.   When Mr. Shoemake says, we can go seize it?

Really?  Does he really want to do that?  I don't think

he does.   All right .

Other thing I wanted to mention to you, and we

made this very clear in our response, and Your Honor

knows this better than anybody,  for the purpose of

setting conditions of bond under 3142,  the focus is,

protect the public and assure the appearance of this

Defendant in court, that is the guidepost of 3142.   And

those are the anchors that 3142 ties to the mandate that

Your Honor,  as you know,  must impose, quote, the least

restrictive conditions possible to assure the

Defendant's appearance and protect the public.   Now,

Mr. Shoemake has some arguments that are, quite frankly,

very thick,  right.   When he talks about,  I didn't

hear any argument as to protecting the public,  and as

we pointed out in our response,  there are no victims in

the case,  there is no restitution that will be owed as

it stands.   Again,  upon information and belief we said

this,  the Government has already seized money that is

well in excess of any loss amounts that they even argue

to the Court.   So,  to say that somehow this condition

of restricting my client's lawful activities, again,
there is no debate here that what my client seeks to do
is perfectly lawful, there is no argument that that in
any way would protect the public.

As it relates to assure his appearance, I mean,
this is Mr. Shoemake, this is utterly conjecture. My
client's family is here. He has got children who live
here, he has grandchildren who live here, he has
property here. He has lived here for almost three
decades. And to say somehow that these business
decisions he is trying to make will all of a sudden will
turn him into a flight risk is just ridiculous. This is
the same type argument if you have incendiary on the
property --

THE COURT: Let me ask this, if he transfers
complete ownership of that park, I mean that think
directly is relevant to that issue.

MR. MOORMAN: To which issue? Flight risk.

THE COURT: Yeah.

MR. MOORMAN: And, Your Honor, I don't want to
assume -- I am curious to know, why would you --

THE COURT: If he has no interest in that park,
that park, I think we would agree, would be a
significant asset in his name, right?

MR. MOORMAN: Well, I mean, the park, the

animals, the business that he has developed, but,
again, he -- like we talked about earlier, I mean, I
would disagree with that, Your Honor. To say that,
that ascends that that is the mainstay keeping him here,
that is the critical piece.

THE COURT: Well, I can tell you, part of my
decision certainly relied on the fact that he did have a
lot of family here, that he did own a number of assets
here, including that Park, which was a significant
asset in his name.

MR. MOORMAN: Right.

THE COURT: And so if he divests himself of that
--

MR. MOORMAN: Your Honor, I would argue that
doesn't change the equation because he still has
multiple pieces of real estate.

THE COURT: Well, may be. May be. I mean,
playing a numbers game, this is only, you know, a
certain percentage of the whole pie.

MR. MOORMAN: This is the slippery slope.

MR. BEASLEY: Your Honor, just as represented by
his assets, the Park only represents 20 percents of all
of his assets.

THE COURT: And the Park, you know, the
transfer of the Park, does that include the real estate

1    on which the Park sits?

2        MR. BEASLEY:  I think it is just the zoo part.

3        MR. MOORMAN:  And so, Your Honor, that is, the

4    transfer of the MBS would include the property, what is

5    the MBS.  But, again, Your Honor, this is a slippery

6    slope, all right.  When you come back before the Court

7    on conduct that is perfectly lawful and he is perfectly

8    in compliance --

9        THE COURT:  I know.  Let's just assume for the

10   sake of argument that all assets were in the process of

11   being transferred, that would be relevant to --

12       MR. MOORMAN:  Let me ask you this, Your Honor,

13   let's say he goes and gets his driver's license renewed,

14   right.  I mean, and I don't mean to  -- but, you could

15   make the argument, you can spin any of these facts in a

16   way to try to put him in flight risk.  If he needs a

17   driver's license, you can say, well, he wants to

18   maintain his privilege to drive, if he can drive, he

19   can leave.  That is a slippery slope.  That is the

20   problem.

21       THE COURT:  That is a little more tenuous than --

22       MR. MOORMAN:  Well, you say that.  But, Your

23   Honor, you know, you talk about things that may have

24   changed in this transaction, what Your Honor did not

25   have at the time you set bond originally is a course of

conduct and a history of Mr. Antle on bond being utterly
compliant with all of the conditions of bond.

THE COURT:   Okay.

MR. MOORMAN:  Right?

THE COURT:   Yeah.

MR. MOORMAN:  So,  I think that is also something.
If you are looking at the landscape now versus before,
you have Mr. Antle on electronic monitoring since the
end of June with absolutely no violations,  no concerns
of any kind,  right.

The other thing that I want to talk about,  too,
again,  is let's say Your Honor wants to get in the
business of controlling business decisions,  by way of
limiting of moving of animals and stopping of transfers.
And by the way,  I do think this is important.

THE COURT:   I think those are two very different
issues.

MR. MOORMAN:  But I think  -- I think both are
significant.  Before I get to those,  I do want to
mention,  looking at the regulations associated with the
USDA permitting and licensing,  okay,  under federal
law, under CFR,  the business cannot be transferred
unless Sugriva is licensed and does receive a permit,
right.  So,  I think that is also significant from the
standpoint of before this happens,  before Sugriva can

take transfer, take ownership and possession of the
Myrtle Beach Safari, the USDA must complete its process
by way of permitting and licensing. So, that is
significant because there is a concern that the animals
will be transferred, that won't be accomplished unless
the USDA is completely satisfied, bottom line, that
the transfer is appropriate.

Let's go back to the order itself. If Your
Honor, if Your Honor says, okay, I will grant the
Government's motion, and I am going to prevent -- I am
going to prevent the transfer of both the company and
the 120 animals, endangered species, right, because,
again, the way it is written, we are not just talking
about the animals that are subject to the Counts in the
Indictment, we are talking about all of the endangered
species. And then Mr. Shoemake then says by the way,
what about all the chimps? All right just the chimps.
There are over 20 chimps on the property. So, let's
say Your Honor thinks that it is a good idea for the
Court to weigh in on these lawful business decisions,
how will Your Honor's Order be enforced, right?
Because at some point you got to go out and identify
what is on the Safari, right. And identification is
part of a component in this case. And so as before, we
would instruct Mr. Antle to not speak or interact with

1    law enforcement without purpose, right.  So, how, I

2    mean,  is the FBI going to go out there and try to take

3    DNA swabs of the animals to determine what is there is

4    down in the Court's order?  Is an agent going to go in

5    the cage of the chimps and get that done?  I don't

6    understand how, even if Your Honor wanted to enforce the

7    Order,  how you could do it as a practical matter.

8         THE COURT:  Well,  again,  I think you have two

9    different issues,  transfer of animals versus transfer

10   of assets I think is distinguishable.

11        MR. MOORMAN:  But,  Your Honor,  that is why I

12   would respectfully -- I think it is essential without a

13   difference because the animals,  the animals make the

14   business go,  right.  So,  if you -- to divorce the

15   two, quite frankly, I believe underestimates or

16   understates the importance of the animals and the

17   ability to transfer the animals as relates to the health

18   and transfer of the business.   If the business is

19   weighing  -- I just don't think the distinction is a

20   mean,  I understand Your Honor's comment there, but I

21   just don't think it is a mean by extension.   I don't

22   understand how with his ties to the community, with the

23   history of bond, with his conduct while he has been on

24   bond, with his family, I don't understand how this sort

25   of moves the needle by way of his ability to  --

1        MR. BEASLEY:  Your Honor,  most of this transfer

2   has to do with just the animals,  not the real estate,

3   that is the whole thing.   And it has to do with the

4   USDA and,  you know,  not the U. S. Attorney's office.

5        MR. MOORMAN:  One other thing I would say,  Your

6   Honor.

7        THE COURT:   Okay.

8        MR. MOORMAN:  Mr. Shoemake made a comment that

9   this happened while he was in jail,  right,  that there

10  is an LLC that was created while he was in jail, as if

11  there is something nefarious and defense counsel did not

12  make anybody aware.   Let's talk about jail because I do

13  think this is significant because I think context

14  matters.   You got Mr. Antle,  62,  never been in

15  trouble.   Not given any opportunity whatsoever to turn

16  himself in,  not given a summons in a case of this kind,

17  which is very common.   He is arrested at his house.

18  The Government moves for detention, which Your Honor

19  widely denies.   A guy 62,  never been in jail,  who

20  sits for 20 plus days,  right.   Has a lot to consider,

21  right.   And he tries -- Mr. Shoemake says something

22  --implies there is something nefarious with this

23  transfer, quite frankly.  That is the implication . Why

24  is he trying to transfer?  There is something nefarious

25  about it,  right?  Well,  I put myself in his position,

and if I were 62, I have been working 16 hours a day
for 30 years, I am sleeping on a concrete floor, I
begin to realize, you know what, I am tired? Right.
Maybe I do want to slow down, right? Maybe I want to
enjoy what I have built. So, this idea that somehow
he wants to divest himself of this property that he has
got this grand plan to take off doesn't make sense,
especially with the family and property he has.

MR. SHOEMAKE: Your Honor, if I may, just very
briefly, just a few quick points. It is clear that
defense counsel and the Government are never going to
agree about who Mr. Antle is in terms of his conduct,
but I think it is important to note that recordings that
were discussed before this Court that are mentioned in
filings, two years before this case ever began, we
have Mr. Antle attempting to do a $200,000 money
laundering operation, which he then later says on
recording was going to be used to buy animals, animals
which we contend were bought illegally, which are now
subject to federal charges, and which we have evidence,
including cooperators to verify, that, yes, in fact,
they were paid $200,000 to sell animals across state
lines. So, this idea that this is a man who has done
nothing wrong, salt of the earth, he was arrested here
after he had been charged in Virginia for wildlife

trafficking and animal cruelty and other charges.    I
take issue with the idea that this is some innocent guy
who was just trying to get by.    An LLC was created by a
person who has admitted to being a bit of a fraudster
and laundering money, and we think it was created to
obstruct justice.    We think it was created to avoid the
Government getting their hands on the evidence in this
case.

So,  Your Honor,  I do think there was an intent
to evade Government regulation here.    And specifically,
Your Honor,  with these animals,  we have a chimpanzee
that is there right now awaiting an infrastructure, but
was there this whole time that was under a Court Order
that was to be returned,  a Federal Court Order saying
this chimp was to be returned, it had safe haven at a
park.   We have another animal subject to  -- another
chimpanzee, who is subject to our Indictment, who we
believe is there illegally.   To allow the chimpanzees
and cheetahs to be transferred is equivalent to allowing
contraband to be transferred because at least some of
those animals constitute contraband in the Lacey Act
violations.

And in terms of enforceability,  Your Honor,
that is our job,  it is not your job.   Your job is to
say he is not allowed to do it,  it is our job to

investigate and discover if he has.

So, again, Your Honor, I don't see any issue with enforceability. And, again, I do think it ties directly to his ability to move freely about when he is not encumbered by the statute. We are not talking about, Your Honor, him selling it to some independent third-party zoo, we are talking about selling it to a LLC, who is one-hundred percent owner, someone who lives on the compound and has a very close relationship with Mr. Antle. So, we do believe a bond modification is appropriate.

MR. MOORMAN: Your Honor, what is his plan as to how to identify the animals?

MR. SHOEMAKE: I mean, Your Honor, the plan is, we know the animals he has right now that are endangered subject to the Indictment are chimpanzees and cheetahs. We have based on cooperators, we feel very confident, we know as recently as two weeks ago the animals were there based on the cooperators we have, but beyond that, Your Honor, that is our job. We are saying he shouldn't be allowed to transfer them. Right now he is admitting in open Court he has intention of transferring animals that are actually subject to this case. And that is, again, Your Honor, that is absurd.

MR. MOORMAN: That is not the case. Never

admitted that we had intent to transfer animals.   What
I said,  Your Honor,  is that they should -- should it
come about that the animal be in better position
somewhere else,  track the transfer to be accomplished
lawfully, it is not appropriate for Your Honor to
prohibit that.   But, again,  he can't tell you what the
plan is to even identify what animals he is talking
about.   I mean,  again, that is why this is
unenforceable.

          Your Honor,  he has talked about a Virginia
case,  right,  he has gone in the facts Your Honor heard
initially,  I will say this,  he was charged in Virginia
in 2020.   The entire time since he has been charged, he
was at the Myrtle Beach Safari.   They called him on the
phone.   He was right there.   We were in Virginia
earlier this week to watch proceedings occurring there.
There is a Motion to Suppress,  it is going to be heard
on October 20th,  right.   In Virginia, you do not get
an evidentiary hearing on a Motion to Suppress unless
the Court grants that motion.   Mr. Antle's defense team
in Virginia has gotten the Court to grant an evidentiary
hearing on the 20th of October for that Motion to
Suppress.   And by the way,  that Motion to Suppress
relates directly to the cellphone is the subject or was
used to search Mr. Antle's cellphone that forms the

basis, the bedrock of the evidence the Government has

on all of the animal charges. And by the way, the

animal charges that are so serious by what the

Government says, by my recollection, have him on

misdemeanors, are misdemeanors. Right.

So, and I think Mr. -- I will just say,

Mr. Shoemake would agree with this because he has

indicated the Government has tried very hard to wall

this off, the affiant on the search warrant from

Virginia used to search his cellphone is currently under

indictment for embezzlement in Virginia. Right. So,

again, and we are still waiting on some of the

discovery to review this, but if you look at the

bedrock of the Government's animal case, the most

important part, it comes from the execution of the

search warrant of the cellphone in question. Again,

which was accomplished by the use of an affidavit sworn

to by an officer who is under indictment for

embezzlement, and my understanding those allegations is

that that agent or that officer, the conduct involved

stealing from his own agency.

MR. SHOEMAKE: Your Honor, if I could, I know

this is not particularly relevant, I just don't like to

go unanswered, I fundamentally disagree with that

characteristic in its entirety. I can go in detail.

Our case.

    THE COURT:  I am not going to do.

    MR. SHOEMAKE:  I know.  I didn't want  -- I hear you,  Judge.

    THE COURT:  I am going to take a little break and I am going to review a couple other things.  So,  take about 15 minutes,  so I will take a little recess, and we will reconvene.

(Whereupon,  a short recess was held.)

    THE COURT:  You know,  what hit me with this initially is this really is not proper bond consideration information.  You know,  as to,  in essence,  a restraining order,  I mean there are provisions in a bond that effectively amount to a restraining order, but you are trying to ask me to enter a Temporary Restraining Order,  in essence,  regarding the evidence in this case, and I think that is something that is properly brought before the District Judge, who is handling the case,  if it is an issue of,  you know, of protectionism of the person on the forfeiture provision of the Indictment.

    But as I was talking earlier,  Mr. Moorman,  I mean,  I do think that transfer of the assets, and I will tell you about,  as far as whether or not to detain him or not,  one of the big factors was the fact that he

did have a significant amount of assets and an ongoing
business that have been in place for a long time and a
lot of family in that area.  And, you know,  and the
issue of flight I thought that was just overwhelmingly
against that in his favor for his person.

Mr. Beasley,  I couldn't find my notes as to
values of everything.   You are saying that this
represents 20 percent of his assets,  I note as far as
the ongoing business  -- go ahead.

MR. MOORMAN:  Your Honor,  first off,  if Your
Honor wants, we can get you a sort of give you a
breakdown specifically as to how much -- what he has got
left,  it has diminished a lot in the Myrtle Beach area.
But also, in talking with Mr. Antle,  he is going to
retain ownership of the land on which --

THE COURT:   Well, I thought he wasn't.  I thought
that was one of the questions.

MR. MOORMAN:  So,  my understanding is it is a
lease situation between,  let me double-check, I want to
make sure that is right.

(Whereupon, there was a pause in the record.)

MR. MOORMAN:  So,  he is talking about,  he is
sole member of an LLC that owns the real estate on which
the Myrtle Beach Safari sits.   That LLC will retain
ownership,  my understanding is,  will retain ownership

when Myrtle Beach Safari is transferred to Sugriva.
And the Myrtle Beach Safari will then be paying the LLC
rent for the purposes offering.  So, there is still a
-- there is still a tie to the Safari from the
standpoint he will be the sole member of an LLC that
owns that.

THE COURT:  You know, I am reluctant to ask why
this is happening.  You know, I am interested, but I
don't know  -- go ahead.

MR. MOORMAN:  As an officer of the Court, okay,
I am not going to share, I am not going to share any
indications, but this is my take on what is happening,
okay.  Mr. Antle, 62 years old, heart condition,
AFib, very serious, other health problems we have
discussed, right.  He is arrested, and this is his
life in June, he is arrested, he is taken to J. Reuben
Long.  He is in a cell that is so hot that on occasion
they open the door, fire alarm goes off, he has got to
sleep on the concrete to try to keep cool.  That is
sort of the environment he is in, never been in there
before, right.  He is in there for 20-plus days, he
loses close to 40 pounds while he is in there.  As you
might expect, when you have a jar like this at that
age, things become a little bit -- you begin to think
more about what is left, right.  And part of what you

think about is, you know what, I am tired, right. I

have been running this business for 30 years, 16 hours

a day, right. I am beaten up because I am taking care

of animals, and sometimes you get hurt, right. So,

maybe at 62, maybe I need to slow down. Maybe I need

to enjoy it as opposed to being the one who was

responsible for the day-in, day-out 150 animals,

thousand pounds of meat bringing it all in, Your Honor,

I think that experience brought tremendous clarity to

him.

And, quite frankly, to -- there is just no

evidence to infer anything else. I mean, I think that

had a profound -- I mean if you saw him before he went

in and after, when he came out, tremendous difference.

THE COURT: Well, I take your word for what it

is worth, and I have no reason to doubt that, but just

in the generic sense, you know, if I have a case and

somebody is unloading assets, that is a little bit of a

red flag.

MR. MOORMAN: It is.

THE COURT: That could be the other explanation

just as easily as what yours is.

MR. MOORMAN: I understand. But this is very

unique, right, because this isn't a car that you are

going to sell. This is a tenuous undertaking. I

mean, literally, every day something can happen. So,
when you say unloading assets, he has got -- he has got
an obligation, as the owner, as the -- I mean, quite
frankly, the figure who is responsible for the survival
of these animals, right, he also has the responsibility
to make sure he can't just not have a plan and make sure
that they are okay.

MR. BEASLEY: And these animals are not going
anywhere. They are staying on the property.

THE COURT: My understanding is, any transfer of
any of those animals is subject --

MR. BEASLEY: Well, somebody has to be able to
continuously take care of these animals and legally.
And this is, by all accounts, we are doing this by the
book, per USDA policy, and that is why we are doing it
this way. We are not doing anything nefarious,
nothing that nobody is not aware of.

THE COURT: I mean, if an animal was
transferred, does somebody not have to be notified?

MR. BEASLEY: It is all -- yes. Yes, all of
this is going through the USDA then. All of this.

THE COURT: Any argument with that?

MR. SHOEMAKE: Yes, Your Honor. Part of the
evidence we have in this case is falsified forms to the
USDA about what happened with these animals. Yes,

documentation is required, but Mr. Antle has a history of falsifying those documents.

MR. BEASLEY:  Judge,  if that was the case,  they would deny his renewal license and shut down the whole thing already,  but they can't, which is why they notified the Federal Government to come about it in another way.   That is the whole point of this because they are doing everything by the book and they cannot shut down their license,  they can't stop the transfer. That is the whole point.   They are doing it by the book and that is the whole thing.

THE COURT:   You know,  I go back to this is an issue of bond.

MR. SHOEMAKE:  Correct.

THE COURT:   And my concerns are danger to the public and risk of flight.   And what, you know, preservation of evidence,  I just think this is the wrong place to be addressing that.   But as to the transfer of assets,  I do think that is relevant to that inquiry, and I don't know the details of any of that.

MR. SHOEMAKE:  Your Honor,  may I offer a suggestion?  As I mentioned,  we have alternative paths. I have talked to our asset forfeiture people.   We plan by the end of next week to file civil proceedings restraining these assets and then we will seek an

injunction. And so if Your Honor would like, if your concern is the transfer, you could limit that order for, you know, 45, 60 days, that will give us time to get these other things in motion.

THE COURT: I still -- I don't think -- this isn't the right place for that. I mean, if I think that that goes to the risk of flight, then I think that that would be or a danger to the public then I think this is the proper forum to do that, but otherwise I just don't know that --

MR. SHOEMAKE: Your Honor, obviously, I respectfully disagree it doesn't go to risk of flight. But, again, I understand where you are coming from. Like I say, we do have alternative paths. I think this is the cleanest because I think it is a risk of flight issue. We are in the process of pursuing other avenues.

THE COURT: Look, how is it a risk of flight issue?

MR. SHOEMAKE: I think it goes back to the idea of divesting yourself of your primary assets and taking yourself out of the picture.

THE COURT: Well, I am trying to find out whether or not it is a primary asset, and I can put a provision in place, and I do intend to put a provision

in place that the Court is notified in advance of any potential transfer of the assets. You know, I think that I can do that. So, if any real estate is intended to be sold or anything like that, then I would know about it. I don't know why I wouldn't require the Government to be informed of that, as well.

MR. MOORMAN: Your Honor, I would just take issue of the primary asset, as we represented to Your Honor, the Myrtle Beach Safari is a very small piece of the assets he has got locally. So it is not the primary asset.

MR. BEASLEY: And we have never hidden any of this, we have been working with the USDA to do all of this, which is --

THE COURT: Is it, you know, the amount of the sale, is that something that can be shared?

MR. BEASLEY: Your Honor, there is no money amount. They are just transferring the ownership of the animals, that is all it is. That is what the USDA license requires for her to be able to take care of those animals, and keep them alive, and continue the business, that is the whole thing. That is the whole point of it.

THE COURT: The idea is to do that and then lease the park itself?

1    MR. BEASLEY:  Correct.   And he would still own

2    all the real estate.

3        THE COURT:   Mr. Shoemake?

4        MR. BEASLEY:  And,  Your Honor,  it is obviously

5    it is illegal to sell the animals anyway,  so he

6    wouldn't do that.   It is just transferring ownership.

7        THE COURT:   Well,  there is already a provision

8    in the bond not to violate the law.

9        MR. BEASLEY:  Correct.   It is all per USDA

10   regulations doing what we are doing -- what they are

11   doing.

12       THE COURT:   I will be glad to hear from you more,

13   Mr. Shoemake.   I just think as far as the relatively

14   narrow scope of my consideration --

15       MR. SHOEMAKE:  Like I say,  Your Honor,  I think,

16   the Government has a different view of that,  but I

17   fully understand what the Court is saying, and we do

18   have --

19       THE COURT:   Well,  I don't know why you have a

20   different view of it.   I think the,  I mean,  it is a

21   risk of flight issue and I agree to disposing of assets

22   is something that I would consider in that equation.   I

23   mean,  you know,  if all of the assets were disposed of

24   maybe detention is proper.

25       MR. SHOEMAKE:  Well,  Your Honor,  I do think that

protecting the evidence I do think is something that the
Court has considered in the past and can be considered.
And I think, I mean, we have heard back and forth an
issue I mentioned of transferring animals, I think
there was some conversation they weren't seeking to do
that, now it is clear they -- it is exactly what they
are doing is seeking to transfer ownership of animals,
that is illegal and contraband and we think -- we
believe that to be obstructive conduct. I understand
what the Court is saying, but, you know, that is our
position. But, again, we do have, as Your Honor
mentioned, there are other avenues the Government has,
as well, that are more in line with strictly speaking --

THE COURT: Yeah, again, I think if something
illegal is transpiring then that could be an issue of
bond if I made a determination that illegal conduct was
going on, that would, but my solution to that is not
necessarily to stop doing what you are doing. My
solution is whether or not -- I mean, I guess that
could be a solution, whether to have a bond in place or
not. Is there a timing aspect of when this transfer is
supposed to take place?

MR. MOORMAN: Your Honor, we will check. My
understanding, again, in talking with the lawyers on the
regulatory side of this, the transfer won't take place

1    until the permitting or licensing is accomplished.  So,

2    part of the timetable will be dictated by what happens

3    on that front, which is uncertain.

4         MR. BEASLEY:  It should have already been done,

5    but they canceled the inspection and they have been

6    delaying, the USDA, so there is no time frame.  He can

7    continue to operate right now until they deny, or

8    transfer, or whatever, he is perfectly compliant with

9    the USDA at this point.  So, we don't have a time frame

10   because it is in their -- it is with them, it is in

11   their hands.

12        THE COURT:  Sometimes I do put conditions on bond

13   that do relate to the safety of the public.  I am

14   thinking of things in particular and that doesn't appear

15   to be what the Government's position is here, it all

16   relates to the risk of flight.

17        Any objection if I put a condition of bond that

18   Mr. Antle notify the Court of any transfer of any

19   assets?  And also let the Government know, as well?

20        MR. MOORMAN:  Just a couple of things came to

21   mind.  I mean, conceptually, that doesn't give me

22   heartburn, but permanently I would say assets is a very

23   broad term.

24        THE COURT:  I am thinking it through as you are

25   talking.  I don't mean to paperclip.

1        MR. MOORMAN:  The other thing,  you know,  Your

2    Honor, again,  that I always come back to is if the sale

3    is not  -- is lawful, and it is not in violation of the

4    bond then -- and it is not related to the case,  so,

5    for example,  Your Honor put a condition on bond saying

6    provided the -- providing the probation office with

7    access to record -- his financial records upon request.

8        THE COURT:   I did that.

9        MR. MOORMAN:  You did that.   That is already in

10   place,  for example,  right? So,  just thinking through

11   just sort of, and I don't want to assume,  Your Honor,

12   in thinking through some of the contours of a proposed

13   condition like this,  what would be the motivation for

14   imposing a condition would be like that would be,  what

15   that  --

16       THE COURT:   Well,  obviously,  the sale of assets

17   and,  you know,  I am thinking in terms of substantial

18   assets, but I am reluctant to use that term.

19       MR. BEASLEY:  Might refer to real estate.

20       THE COURT:  I don't have his financial statement

21   right here.   My recollection is that Park has a

22   significant value and real estate has a significant

23   value.

24       MR. MOORMAN:  I don't think we have any objection

25   as it relates to real estate.

1   THE COURT: Mr. Shoemake, any ideas on that

2 issue on particular assets that may apply to?

3   MR. SHOEMAKE: I mean, I don't object to that,

4 Your Honor. I mean, to be frank, Your Honor, I think

5 the primary concern the Government has is the Safari

6 Park and those animals. So, I mean, those other assets

7 are potentially substitute assets down the road, but

8 obviously if he starts divesting himself of more assets,

9 I think given the ambit of where the Court is I think

10 limiting it to real estate is fine. I mean, we

11 obviously take issue with any transfer of the animals,

12 which we made clear, but, again, I understand that is

13 outside the scope of what we are talking about now. I

14 wouldn't have trouble with real estate in these

15 conditions.

16   THE COURT: All right. Well, I am just going

17 to make that any sale or other transfer or divestiture

18 of any real estate or Myrtle Beach Safari Park --

19   MR. MOORMAN: And I want to make sure --

20   THE COURT: -- or its assets.

21   MR. MOORMAN: Okay. I want to make sure we

22 eliminate ambiguity, as Your Honor does. Sale,

23 transfer, you said what was the last part divestiture.

24   THE COURT: Divestiture. I am trying to cover

25 all ambits, that we cover sale. I take it we

understand the intent of that is to cover any transfer whatsoever of his ownership to anybody else, whether for profit, for money, for five dollars love and affection, it doesn't matter.

MR. MOORMAN: And condition is a notice requirement?

THE COURT: And to notify the Court ten days prior to any.

MR. MOORMAN: Okay.

THE COURT: Okay. Anything further?

MR. MOORMAN: Nothing further.

MR. SHOEMAKE: No, Your Honor.

THE COURT: All right. Thank y'all very much.

MR. MOORMAN: Thank you. Appreciate it. Your Honor.

THE COURT: Yes, sir.

MR. MOORMAN: Are you going to issue a Written Order or Text Order?

THE COURT: That is a verbal Order in place now effective now, but I will, I am going to write it out and make sure I like the verbiage, I will do a Text Order, though.

MR. MOORMAN: Thank you Your Honor.

THE COURT: Thank you.

(Whereupon, the hearing concluded at 12:28 p.m.)

1                           CERTIFICATE

2

3

4        I certify that the foregoing is a correct transcript

5    from the official electronic sound recording of the

6    proceedings in the above-entitle matter.

7

8

9

10    _____                    September 22, 2022
      S/Debra R. Bull                      Date
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**$**

**$200,000** [2] - 24:16, 24:22

**1**

**10:59** [1] - 3:1
**120** [4] - 13:5, 13:20, 15:22, 21:12
**12:28** [1] - 42:25
**130** [1] - 13:5
**14** [1] - 1:4
**15** [1] - 29:7
**150** [2] - 13:3, 32:7
**151** [1] - 1:16
**16** [2] - 24:1, 32:2

**2**

**20** [5] - 13:11, 18:22, 21:18, 23:20, 30:8
**20-plus** [1] - 31:21
**200** [1] - 1:17
**2020** [1] - 27:13
**2022** [1] - 1:4, 43:10
**20th** [2] - 27:18, 27:22
**22** [1] - 43:10
**222** [1] - 1:14
**29401** [1] - 1:17
**29501** [1] - 1:14
**29601** [1] - 1:20, 1:23
**29624** [1] - 2:3
**2ND** [1] - 1:20

**3**

**30** [1] - 24:2, 32:2
**3142** [3] - 16:10, 16:12, 16:13
**315** [1] - 2:3

**4**

**40** [1] - 31:22
**401** [1] - 1:13
**416** [2] - 1:19, 1:22
**45** [1] - 35:3
**4:22-580** [1] - 3:5
**4:22-CR-580** [1] - 1:3

**6**

**60** [1] - 35:3
**62** [5] - 23:14, 23:19, 24:1, 31:13, 32:5

**A**

**a.m** [1] - 3:1
**A/K/A** [2] - 1:6, 1:7

**ability** [6] - 8:14, 9:23, 9:24, 22:17, 22:25, 26:4
**able** [4] - 8:22, 9:5, 33:12, 36:20
**above-entitle** [1] - 43:6
**absolutely** [1] - 20:9
**absurd** [1] - 26:24
**accept** [1] - 6:16
**access** [1] - 40:7
**accomplished** [4] - 21:5, 27:4, 28:17, 39:1
**according** [2] - 4:7, 9:6
**accounts** [4] - 5:11, 5:12, 8:1, 33:14
**accurate** [1] - 5:4
**acknowledges** [1] - 11:13
**Act** [2] - 5:17, 8:4, 10:9, 10:23, 25:21
**actions** [1] - 11:10
**actively** [1] - 13:16
**activities** [2] - 6:19, 17:1
**activity** [1] - 11:15
**actual** [1] - 8:18
**add** [1] - 11:18
**adding** [1] - 8:16
**addition** [1] - 10:7
**address** [2] - 4:11, 5:3
**addressing** [1] - 34:18
**admitted** [2] - 25:4, 27:1
**admitting** [1] - 26:22
**advance** [1] - 36:1
**affection** [1] - 42:3
**affiant** [1] - 28:9
**affidavit** [1] - 28:17
**AFib** [1] - 31:14
**age** [1] - 31:24
**agency** [1] - 28:21
**agent** [2] - 22:4, 28:20
**ago** [2] - 3:8, 26:18
**agree** [4] - 17:23, 24:12, 28:7, 37:21
**agreed** [1] - 6:23
**ahead** [2] - 30:9, 31:9
**AIDED** [1] - 2:5
**ALAN** [1] - 1:12
**alarm** [1] - 31:18
**algae** [1] - 15:8
**alive** [1] - 36:21

**allegation** [1] - 15:24
**allegations** [1] - 28:19
**allege** [2] - 11:19, 11:20
**allow** [7] - 6:21, 7:5, 8:4, 10:20, 10:21, 10:24, 25:18
**allowed** [4] - 6:4, 10:7, 25:25, 26:21
**allowing** [1] - 25:19
**almost** [1] - 17:9
**alternative** [2] - 34:22, 35:14
**ambiguity** [1] - 41:22
**ambit** [1] - 41:9
**ambits** [1] - 41:25
**AMERICA** [1] - 1:12
**amount** [4] - 29:14, 30:1, 36:15, 36:18
**amounts** [1] - 16:24
**AMY** [1] - 1:15
**anchors** [1] - 16:13
**ANDERSON** [1] - 2:3
**ANDREW** [1] - 1:18
**animal** [15] - 10:8, 13:24, 14:6, 14:10, 14:11, 15:25, 25:1, 25:16, 27:3, 28:2, 28:3, 28:14, 33:18
**animal's** [2] - 13:23, 14:3
**animals** [58] - 3:25, 6:4, 6:12, 7:7, 8:3, 8:5, 8:8, 8:22, 10:12, 10:18, 10:22, 12:23, 13:3, 13:6, 13:18, 13:21, 14:1, 14:22, 15:22, 16:2, 16:3, 18:1, 20:14, 21:4, 21:12, 21:14, 22:3, 22:9, 22:13, 22:16, 22:17, 23:2, 24:18, 24:22, 25:11, 25:21, 26:13, 26:15, 26:18, 26:23, 27:1, 27:7, 32:4, 32:7, 33:5, 33:8, 36:19, 36:21, 37:5, 38:4, 38:7, 41:6, 41:11
**ANTLE** [3] - 1:6, 1:6, 1:7
**antle** [1] - 14:9
**Antle** [32] - 3:5, 3:13, 3:22, 4:2, 4:3, 4:6, 4:8, 6:4, 7:6, 8:20, 9:2, 10:4, 11:7, 11:9, 12:4, 12:9, 13:8, 13:9, 13:22, 15:2, 16:1,

20:1, 20:8, 21:25, 23:14, 24:12, 24:16, 26:10, 30:14, 31:13, 34:1, 39:18
**Antle's** [4] - 11:21, 12:2, 27:20, 27:25
**anyway** [1] - 37:5
**appealing** [1] - 15:13
**appear** [1] - 39:14
**appearance** [2] - 16:11, 16:16, 17:5
**APPEARANCES** [2] - 1:11, 2:1
**appearing** [1] - 11:6
**application** [1] - 12:2
**applications** [1] - 12:1
**apply** [1] - 41:2
**appointments** [2] - 12:7, 12:8
**appreciate** [1] - 42:14
**approaches** [1] - 9:1
**appropriate** [3] - 21:7, 26:11, 27:5
**aptly** [1] - 14:12
**area** [3] - 6:22, 30:3, 30:13
**arguably** [1] - 10:4
**argue** [1] - 16:24, 18:14
**argument** [7] - 4:18, 16:19, 17:3, 17:13, 19:10, 19:15, 33:22
**arguments** [2] - 6:2, 16:17
**arrested** [4] - 23:17, 24:24, 31:15, 31:16
**ascends** [1] - 18:4
**aside** [1] - 8:15
**aspect** [1] - 38:21
**asset** [7] - 7:23, 17:24, 18:10, 34:23, 35:24, 36:8, 36:11
**assets** [28] - 7:19, 8:15, 18:8, 18:22, 18:23, 19:10, 22:10, 29:23, 30:1, 30:8, 32:18, 33:2, 34:19, 34:25, 35:21, 36:2, 36:10, 37:21, 37:23, 39:19, 39:22, 40:16, 40:18, 41:2, 41:6, 41:7, 41:8, 41:20
**associated** [2] - 15:4, 20:20
**assume** [3] - 17:21, 19:9, 40:11
**assure** [3] - 16:11, 16:15, 17:5

**attached** [1] - 3:20
**attempt** [2] - 7:1, 8:11
**attempting** [2] - 3:22, 24:16
**attorney** [1] - 9:7
**ATTORNEY'S** [2] - 1:13, 1:16
**Attorney's** [1] - 23:4
**attorneys** [1] - 12:9
**AUSA** [2] - 1:12, 1:15
**avenues** [1] - 35:17, 38:12
**avoid** [1] - 25:6
**awaiting** [1] - 25:12
**aware** [3] - 7:1, 23:12, 33:17

**B**

**bank** [1] - 7:25
**based** [3] - 3:23, 26:17, 26:19
**basis** [3] - 12:12, 12:13, 28:1
**Beach** [17] - 3:23, 5:12, 5:13, 6:11, 7:24, 9:5, 11:12, 12:19, 13:4, 21:2, 27:14, 30:13, 30:24, 31:1, 31:2, 36:9, 41:18
**BEASLEY** [17] - 1:21, 1:22, 3:16, 18:21, 19:2, 23:1, 33:8, 33:12, 33:20, 34:3, 36:12, 36:17, 37:1, 37:4, 37:9, 39:4, 40:19
**Beasley** [1] - 30:6
**beaten** [1] - 32:3
**become** [4] - 6:7, 6:8, 15:13, 31:24
**becomes** [1] - 9:17
**bedrock** [2] - 28:1, 28:14
**BEFORE** [1] - 1:9
**began** [1] - 24:15
**begin** [2] - 24:3, 31:24
**beginning** [1] - 12:15
**belief** [1] - 16:22
**believes** [1] - 13:22
**best** [2] - 13:23
**better** [4] - 16:3, 16:9, 27:3
**between** [2] - 13:4, 30:19
**beyond** [2] - 5:2, 26:19
**BHAGAVAN** [1] - 1:6

big [2] - 15:7, 29:25
bills [1] - 13:11
birth [1] - 14:10
bit [3] - 25:4, 31:24, 32:18
black [1] - 9:11
BOND [1] - 1:10
Bond [1] - 3:6
bond [32] - 3:8, 4:13, 5:10, 6:3, 7:9, 7:16, 8:20, 9:23, 10:19, 10:20, 11:18, 11:19, 11:22, 15:2, 16:10, 19:25, 20:1, 20:2, 22:23, 22:24, 26:10, 29:11, 29:14, 34:13, 37:8, 38:16, 38:20, 39:12, 39:17, 40:4, 40:5
bonds [1] - 7:13
book [3] - 33:15, 34:8, 34:10
bottom [1] - 21:6
bought [1] - 24:19
BOWER [1] - 1:15
break [1] - 29:5
breakdown [1] - 30:12
brief [1] - 3:17
briefly [1] - 24:10
bring [1] - 13:24
bringing [1] - 32:8
broad [1] - 39:23
brought [3] - 12:17, 29:18, 32:9
built [3] - 13:8, 14:25, 24:5
BULL [1] - 2:2
Bull [1] - 43:10
business [24] - 6:15, 6:17, 12:19, 12:24, 13:7, 13:8, 13:12, 13:16, 13:18, 14:20, 15:3, 17:10, 18:1, 20:13, 20:22, 21:20, 22:14, 22:18, 30:2, 30:9, 32:2, 36:22
businessman [1] - 9:4
buy [1] - 24:18

**C**

cage [1] - 22:5
cancel [1] - 12:16
canceled [1] - 39:5
cancels [1] - 12:8
cannot [2] - 20:22, 34:8
car [1] - 32:24

care [4] - 13:25, 32:3, 33:13, 36:20
cared [2] - 15:23, 16:3
caring [1] - 16:2
CAROLINA [1] - 1:1
case [28] - 3:9, 5:9, 5:10, 5:22, 7:17, 11:6, 11:7, 11:8, 12:16, 15:5, 15:15, 15:25, 16:21, 21:24, 23:16, 24:15, 25:8, 26:23, 26:25, 27:11, 28:14, 29:1, 29:17, 29:19, 32:17, 33:24, 34:3, 40:4
cases [1] - 7:20
catalyst [1] - 4:11
caused [1] - 15:15
cell [1] - 31:17
cellphone [4] - 27:24, 27:25, 28:10, 28:16
certain [1] - 18:19
certainly [3] - 6:17, 9:24, 18:7
CERTIFICATE [1] - 43:1
certify [1] - 43:4
CFR [1] - 20:22
change [1] - 18:15
changed [2] - 7:2, 19:24
changes [1] - 12:7
characteristic [1] - 28:25
characterization [1] - 4:17
charged [7] - 5:6, 5:15, 5:17, 6:6, 24:25, 27:12, 27:13
charges [5] - 5:7, 24:20, 25:1, 28:2, 28:3
CHARLESTON [1] - 1:17
check [2] - 30:19, 38:23
cheetah [1] - 10:15
cheetahs [6] - 5:20, 10:11, 10:14, 10:24, 25:19, 26:16
children [1] - 7:7
chimp [1] - 25:15
chimpanzee [4] - 5:20, 10:15, 25:11, 25:17
chimpanzees [5] - 10:11, 10:14, 10:24, 25:18, 26:16

chimps [1] - 21:17, 21:18, 22:5
Circuit [1] - 7:20
cite [1] - 7:21
civil [2] - 9:24, 34:24
clarifications [1] - 6:1
clarity [1] - 32:9
clean [1] - 6:18
cleanest [2] - 9:22, 35:15
clear [7] - 4:4, 7:12, 7:20, 16:8, 24:10, 38:6, 41:12
client [3] - 13:17, 15:23, 17:2
client's [2] - 17:1, 17:7
close [2] - 26:9, 31:22
collecting [1] - 4:19
coming [2] - 10:13, 35:13
commenced [1] - 3:1
comment [2] - 22:20, 23:8
common [2] - 23:17
communicated [1] - 12:5
community [3] - 9:8, 22:22
company [2] - 21:11
complete [2] - 17:16, 21:2
completely [2] - 4:5, 21:6
compliance [1] - 19:8
compliant [2] - 20:2, 39:8
comply [1] - 11:22
component [1] - 21:24
compound [2] - 4:3, 26:9
conceptually [1] - 39:21
concern [6] - 8:25, 9:5, 14:16, 21:4, 35:2, 41:5
concerns [2] - 20:9, 34:15
concluded [1] - 42:25
concrete [2] - 24:2, 31:19
condition [10] - 6:3, 10:19, 10:20, 16:25, 31:13, 39:17, 40:5, 40:13, 40:14, 42:5

conditions [9] - 7:9, 7:13, 11:22, 14:6, 16:10, 16:15, 20:2, 39:12, 41:15
conduct [9] - 7:23, 15:3, 19:7, 20:1, 22:23, 24:12, 28:20, 38:9, 38:16
confident [1] - 26:17
conjecture [1] - 17:6
consider [2] - 23:20, 37:22
consideration [2] - 29:12, 37:14
considered [2] - 38:2
constitute [1] - 25:21
contend [1] - 24:19
context [1] - 23:13
continuation [1] - 12:18
continue [3] - 10:5, 36:21, 39:7
CONTINUED [1] - 2:1
continuously [1] - 33:13
contours [1] - 40:12
contraband [3] - 25:20, 25:21, 38:8
control [2] - 13:16, 13:20
controlling [1] - 20:13
conversation [1] - 38:5
cool [1] - 31:19
cooperators [3] - 24:21, 26:17, 26:19
copious [1] - 7:24
correct [4] - 34:14, 37:1, 37:9, 43:4
counsel [2] - 23:11, 24:11
Counts [1] - 21:14
couple [4] - 3:7, 4:11, 29:6, 39:20
course [1] - 19:25
Court [33] - 3:10, 3:21, 7:8, 7:16, 9:23, 10:1, 10:6, 10:23, 10:25, 11:4, 11:18, 14:10, 14:14, 14:15, 14:18, 15:20, 16:25, 19:6, 21:20, 24:14, 25:13, 25:14, 26:22, 27:20, 27:21, 31:10, 36:1, 37:17, 38:2, 38:10, 39:18, 41:9, 42:7
court [2] - 14:12,

16:12
COURT [60] - 1:1, 1:10, 2:2, 2:2, 3:2, 3:3, 3:11, 3:13, 11:2, 17:15, 17:19, 17:22, 18:6, 18:12, 18:17, 18:24, 19:9, 19:21, 20:3, 20:5, 20:16, 22:8, 23:7, 29:2, 29:5, 29:10, 30:16, 31:7, 32:15, 32:21, 33:10, 33:18, 33:22, 34:12, 34:15, 35:5, 35:18, 35:23, 36:15, 36:24, 37:3, 37:7, 37:12, 37:19, 38:14, 39:12, 39:24, 40:8, 40:16, 40:20, 41:1, 41:16, 41:20, 41:24, 42:7, 42:10, 42:13, 42:16, 42:19, 42:24
Court's [1] - 22:4
courtroom [1] - 3:14
cover [3] - 41:24, 41:25, 42:1
CR [1] - 1:3
created [5] - 4:2, 23:10, 25:3, 25:5, 25:6
creates [1] - 8:16
criminal [1] - 7:22
critical [2] - 14:20, 18:5
CRR [1] - 2:2
cruelty [1] - 25:1
curious [1] - 17:21
custody [1] - 4:2

**D**

danger [2] - 34:15, 35:8
Date [1] - 43:10
day-in [1] - 32:7
day-out [1] - 32:7
days [4] - 23:20, 31:21, 35:3, 42:7
deal [1] - 15:7
dealing [3] - 7:17, 7:19, 8:25
death [1] - 14:11
debate [1] - 17:2
DEBRA [1] - 2:2
decades [5] - 12:4, 13:9, 14:25, 15:24, 17:10
decision [2] - 4:24, 18:7
decisions [5] - 13:17, 14:20, 17:11,

20:13, 21:20
**deep** [1] - 4:14
**DEFENDANT** [2] - 1:8, 1:18
**Defendant** [3] - 8:13, 9:17, 16:12
**defendant** [1] - 5:6
**Defendant's** [2] - 6:14, 16:16
**defense** [10] - 4:10, 4:15, 4:20, 5:23, 6:20, 8:24, 11:2, 23:11, 24:11, 27:20
**delaying** [1] - 39:6
**denies** [1] - 23:19
**deny** [3] - 12:12, 34:4, 39:7
**dependent** [1] - 13:6
**DEREK** [1] - 1:12
**destroy** [1] - 7:11
**destroyed** [1] - 10:4
**destruction** [2] - 7:14, 7:15
**detail** [1] - 28:25
**details** [1] - 34:20
**detain** [1] - 29:24
**detention** [3] - 5:10, 23:18, 37:24
**determination** [1] - 38:16
**determine** [1] - 22:3
**developed** [1] - 18:1
**dictated** [1] - 39:2
**difference** [2] - 22:13, 32:14
**different** [5] - 14:2, 20:16, 22:9, 37:16, 37:20
**diminished** [1] - 30:13
**directly** [3] - 17:17, 26:4, 27:24
**disagree** [4] - 4:16, 18:3, 28:24, 35:12
**discover** [1] - 26:1
**discovery** [1] - 28:13
**discretion** [1] - 8:7
**discussed** [2] - 24:14, 31:15
**discussion** [2] - 6:24, 6:25
**disposed** [1] - 37:23
**disposing** [1] - 37:21
**dispute** [1] - 3:19
**distinction** [2] - 7:18, 22:19
**distinguishable** [1] - 22:10
**District** [2] - 9:25, 29:18

**DISTRICT** [2] - 1:1, 1:1
**divest** [3] - 4:6, 9:6, 24:6
**divesting** [2] - 35:21, 41:8
**divestiture** [3] - 41:17, 41:23, 41:24
**divests** [1] - 18:12
**DIVISION** [1] - 1:2
**divorce** [1] - 22:14
**DNA** [1] - 22:3
**DOC** [1] - 1:7
**documentation** [1] - 34:1
**documents** [3] - 4:21, 4:22, 34:2
**dollars** [1] - 42:3
**done** [5] - 5:11, 5:14, 22:5, 24:23, 39:4
**door** [1] - 31:18
**double** [1] - 30:19
**double-check** [1] - 30:19
**doubt** [1] - 32:16
**dovetail** [1] - 4:12
**down** [6] - 22:4, 24:4, 32:5, 34:4, 34:9, 41:7
**drive** [3] - 8:18, 19:18
**driver's** [2] - 19:13, 19:17
**during** [3] - 5:9, 6:2, 15:11

**E**

**earth** [1] - 24:24
**easily** [1] - 32:22
**EAST** [2] - 1:19, 1:22
**effective** [1] - 42:20
**effectively** [4] - 4:5, 6:20, 9:9, 29:14
**effort** [1] - 12:17
**either** [1] - 12:12
**electronic** [2] - 20:8, 43:5
**eliminate** [1] - 41:22
**embezzlement** [2] - 28:11, 28:19
**employed** [1] - 4:9
**employee** [3] - 9:8, 9:14
**employees** [1] - 13:11
**empowered** [1] - 13:17
**encountered** [1] - 15:5

**encumbered** [1] - 26:5
**end** [2] - 20:9, 34:24
**endanger** [1] - 14:22
**endangered** [7] - 5:18, 12:23, 13:5, 15:22, 21:12, 21:15, 26:15
**Endangered** [2] - 10:9, 10:22
**enforce** [1] - 22:6
**enforceability** [2] - 25:23, 26:3
**enforced** [1] - 21:21
**enforcement** [1] - 22:1
**engage** [1] - 7:14
**enjoy** [2] - 24:5, 32:6
**enter** [1] - 29:15
**enters** [1] - 7:9
**entire** [2] - 8:16, 27:13
**entirely** [3] - 4:24, 5:4, 6:17
**entirety** [1] - 28:25
**entitle** [1] - 43:6
**environment** [1] - 31:20
**equation** [2] - 18:15, 37:22
**equivalent** [1] - 25:19
**especially** [1] - 24:8
**ESQ** [2] - 1:18, 1:21
**essence** [2] - 29:13, 29:16
**essential** [2] - 22:12
**estate** [12] - 18:16, 18:25, 23:2, 30:23, 36:3, 37:2, 40:19, 40:22, 40:25, 41:10, 41:14, 41:18
**evade** [1] - 25:10
**evaluate** [1] - 10:17
**EVANS** [1] - 1:13
**evidence** [16] - 5:8, 7:9, 7:11, 7:15, 7:24, 8:2, 8:13, 10:3, 24:20, 25:7, 28:1, 29:17, 32:12, 33:24, 34:17, 38:1
**evidentiary** [2] - 27:19, 27:21
**exactly** [1] - 38:6
**example** [4] - 14:24, 15:1, 40:5, 40:10
**excess** [1] - 16:24
**exchange** [1] - 6:22
**execution** [1] - 28:15
**expect** [2] - 8:10,

31:23
**expenditures** [1] - 15:14
**expensive** [1] - 13:14
**experience** [1] - 32:9
**explanation** [1] - 32:21
**expressed** [1] - 14:16
**extension** [1] - 22:21
**extra** [1] - 8:16
**extremely** [1] - 15:23

**F**

**facetious** [2] - 11:6, 15:20
**facilitate** [2] - 7:21, 8:1
**fact** [7] - 4:6, 4:18, 6:8, 8:7, 18:7, 24:21, 29:25
**factors** [1] - 29:25
**facts** [3] - 4:15, 19:15, 27:11
**factual** [1] - 5:25
**failures** [1] - 11:21
**fair** [1] - 6:24
**falsified** [1] - 33:24
**falsifying** [1] - 34:2
**family** [5] - 17:7, 18:8, 22:24, 24:8, 30:3
**far** [4] - 6:9, 29:24, 30:8, 37:13
**favor** [1] - 30:5
**FBI** [2] - 5:1, 22:2
**federal** [2] - 20:21, 24:20
**Federal** [2] - 25:14, 34:6
**felt** [1] - 5:24
**few** [1] - 24:10
**figure** [1] - 33:4
**file** [2] - 9:24, 34:24
**filed** [2] - 3:7, 4:10
**filings** [1] - 24:15
**financial** [5] - 5:1, 14:21, 15:16, 40:7, 40:20
**fine** [1] - 41:10
**finely** [1] - 14:25
**finely-tuned** [1] - 14:25
**fire** [1] - 31:18
**FIRM** [1] - 1:19
**first** [2] - 7:8, 30:10
**fits** [1] - 9:22
**five** [1] - 42:3

**flag** [1] - 32:19
**flagged** [1] - 4:23
**flight** [15] - 8:25, 9:2, 9:3, 9:17, 17:12, 17:18, 19:16, 30:4, 34:16, 35:7, 35:12, 35:16, 35:18, 37:21, 39:16
**FLOOR** [1] - 1:20
**floor** [1] - 24:2
**FLORENCE** [3] - 1:2, 1:3, 1:14
**focus** [1] - 16:10
**footnote** [1] - 6:15
**FOR** [3] - 1:1, 1:12, 1:18
**foregoing** [1] - 43:4
**forfeiture** [2] - 29:20, 34:23
**forms** [2] - 27:25, 33:24
**forth** [1] - 38:3
**forum** [1] - 35:9
**forward** [2] - 3:10, 3:11
**Fourth** [1] - 7:19
**frame** [2] - 39:6, 39:9
**frank** [1] - 41:4
**frankly** [5] - 16:17, 22:15, 23:23, 32:11, 33:4
**fraudster** [1] - 25:4
**freely** [1] - 26:4
**front** [2] - 12:17, 39:3
**full** [1] - 4:5
**fully** [1] - 37:17
**fundamental** [1] - 8:18
**fundamentally** [2] - 4:16, 28:24

**G**

**game** [1] - 18:18
**generic** [1] - 32:17
**given** [4] - 6:15, 23:15, 23:16, 41:9
**glad** [1] - 37:12
**Government** [29] - 3:7, 7:5, 8:4, 8:14, 8:21, 10:25, 11:13, 11:17, 11:20, 12:21, 13:15, 14:3, 14:9, 14:19, 15:21, 16:23, 23:18, 24:11, 25:7, 25:10, 28:1, 28:4, 28:8, 34:6, 36:6, 37:16, 38:12, 39:19, 41:5
**GOVERNMENT** [1] -

1:12

**Government's** [3] - 21:10, 28:14, 39:15
**grand** [1] - 24:7
**grandchildren** [1] - 17:8
**grant** [2] - 21:9, 27:21
**granted** [1] - 12:18
**grants** [1] - 27:20
**greater** [1] - 9:17
**green** [2] - 15:6, 15:9
**GREENVILLE** [2] - 1:20, 1:23
**grounds** [1] - 7:25
**growing** [1] - 9:5
**guess** [2] - 10:10, 38:19
**guidepost** [1] - 16:12
**guy** [2] - 23:19, 25:2

**H**

**habitat** [1] - 14:2
**handling** [1] - 29:19
**hands** [2] - 25:7, 39:11
**hard** [1] - 28:8
**haven** [1] - 25:15
**health** [2] - 22:17, 31:14
**hear** [4] - 11:2, 16:19, 29:3, 37:12
**heard** [3] - 27:11, 27:17, 38:3
**HEARING** [1] - 1:10
**hearing** [8] - 3:1, 5:3, 5:9, 5:10, 6:2, 27:19, 27:22, 42:25
**heart** [1] - 31:13
**heartburn** [1] - 39:22
**held** [1] - 29:9
**hiccup** [1] - 15:15
**hidden** [1] - 36:12
**himself** [5] - 9:6, 18:12, 23:16, 24:6, 41:8
**history** [3] - 20:1, 22:23, 34:1
**hit** [1] - 29:10
**Honor** [99] - 3:4, 3:6, 3:12, 3:16, 3:17, 3:21, 4:10, 4:14, 5:5, 5:9, 5:15, 5:22, 5:25, 6:4, 7:4, 7:8, 7:17, 8:5, 8:12, 8:23, 9:4, 9:15, 9:19, 11:3, 11:8, 11:16, 11:20, 11:22, 12:17, 12:20, 12:22, 13:15, 13:19, 14:4,

14:9, 14:12, 14:13, 14:16, 14:19, 16:8, 16:14, 17:20, 18:3, 18:14, 18:21, 19:3, 19:5, 19:12, 19:23, 19:24, 20:12, 21:9, 21:19, 22:6, 22:11, 23:1, 23:6, 23:18, 24:9, 25:9, 25:11, 25:23, 26:2, 26:6, 26:12, 26:14, 26:20, 26:24, 27:2, 27:5, 27:10, 27:11, 28:22, 30:10, 30:11, 32:8, 33:23, 34:21, 35:1, 35:11, 36:7, 36:8, 36:17, 37:4, 37:15, 37:25, 38:11, 38:23, 40:2, 40:5, 40:11, 41:4, 41:22, 42:12, 42:15, 42:23
**Honor's** [2] - 21:21, 22:20
**HONORABLE** [1] - 1:9
**hopeful** [2] - 8:10, 9:21
**hot** [1] - 31:17
**hours** [2] - 24:1, 32:2
**house** [1] - 23:17
**houses** [1] - 8:3
**hundred** [1] - 26:8
**hurt** [1] - 32:4

**I**

**idea** [6] - 21:19, 24:5, 24:23, 25:2, 35:20, 36:24
**ideas** [1] - 41:1
**identification** [1] - 21:23
**identified** [1] - 14:12
**identify** [3] - 21:22, 26:13, 27:7
**III** [1] - 1:9
**illegal** [5] - 6:19, 37:5, 38:8, 38:15, 38:16
**illegally** [5] - 8:3, 10:16, 10:18, 24:19, 25:18
**illustrations** [1] - 6:1
**impact** [1] - 14:21
**implication** [1] - 23:23
**implies** [1] - 23:22
**importance** [1] - 22:16
**important** [8] - 7:18,

9:16, 11:23, 11:25, 12:20, 20:15, 24:13, 28:15
**importantly** [1] - 7:25
**impose** [2] - 14:18, 16:14
**imposed** [1] - 14:14
**imposing** [1] - 40:14
**improve** [1] - 14:3
**IN** [1] - 1:1
**incendiary** [1] - 17:13
**include** [2] - 18:25, 19:4
**including** [2] - 18:9, 24:21
**incumbent** [1] - 5:24
**independent** [1] - 26:6
**indicated** [1] - 28:8
**indications** [1] - 31:12
**Indictment** [5] - 10:13, 21:15, 25:17, 26:16, 29:21
**indictment** [4] - 5:8, 9:12, 28:11, 28:18
**infer** [1] - 32:12
**information** [4] - 11:14, 14:15, 16:22, 29:12
**informed** [2] - 3:22, 36:6
**infrastructure** [2] - 13:12, 25:12
**inherently** [1] - 3:24
**initial** [1] - 6:10
**injunction** [2] - 9:25, 35:1
**innocent** [1] - 25:2
**inquiry** [1] - 34:20
**inspection** [2] - 12:14, 39:5
**inspections** [1] - 12:8
**institution** [1] - 5:1
**instruct** [1] - 21:25
**instrumentalities** [1] - 15:19
**instrumentality** [1] - 7:21
**intend** [1] - 35:25
**intended** [1] - 36:4
**intent** [3] - 25:9, 27:1, 42:1
**intention** [1] - 26:22
**interact** [1] - 21:25
**interaction** [1] - 14:5
**interest** [6] - 4:6, 8:7,

13:16, 13:23, 13:24, 17:22
**interested** [1] - 31:8
**interfere** [1] - 14:19
**intrusion** [1] - 14:18
**investigate** [1] - 26:1
**involved** [5] - 5:18, 5:21, 6:19, 9:10, 28:20
**issue** [20] - 6:6, 6:7, 6:9, 7:16, 17:17, 17:18, 25:2, 26:2, 29:19, 30:4, 34:13, 35:16, 35:19, 36:7, 37:21, 38:4, 38:15, 41:2, 41:11, 42:17
**issues** [3] - 5:16, 20:17, 22:9
**itself** [6] - 4:1, 7:25, 12:24, 15:16, 21:8, 36:25

**J**

**jail** [4] - 23:9, 23:10, 23:12, 23:19
**jar** [1] - 31:23
**job** [5] - 25:24, 25:25, 26:20
**JUDGE** [1] - 1:10
**Judge** [3] - 29:4, 29:18, 34:3
**June** [2] - 20:9, 31:16
**justice** [3] - 7:12, 7:15, 25:6

**K**

**keep** [3] - 8:21, 31:19, 36:21
**keeping** [1] - 18:4
**keeps** [2] - 10:2, 10:4
**KEVIN** [1] - 1:6
**kind** [3] - 11:19, 20:10, 23:16
**known** [1] - 7:2
**knows** [1] - 16:9

**L**

**Lacey** [3] - 5:17, 8:4, 25:21
**laid** [2] - 3:18, 4:15
**land** [1] - 30:15
**landscape** [1] - 20:7
**large** [2] - 9:2, 9:4
**last** [5] - 5:16, 6:2, 9:19, 9:20, 41:23
**laundering** [7] - 5:6, 5:7, 5:11, 7:22, 8:1,

24:17, 25:5
**LAW** [2] - 1:19, 1:22
**law** [5] - 7:11, 7:19, 20:22, 22:1, 37:8
**lawful** [7] - 11:15, 13:16, 17:1, 17:3, 19:7, 21:20, 40:3
**lawfully** [1] - 27:5
**lawyer** [1] - 9:9
**lawyers** [4] - 3:15, 4:7, 5:3, 38:24
**layer** [1] - 8:16
**lease** [2] - 30:19, 36:24
**least** [6] - 4:7, 5:19, 6:10, 9:6, 16:14, 25:20
**leave** [1] - 19:19
**left** [2] - 30:13, 31:25
**legal** [3] - 6:2, 7:14, 8:17
**legally** [1] - 33:13
**legitimacy** [1] - 6:16
**legitimate** [2] - 6:17, 8:6
**less** [2] - 15:13, 15:14
**letter** [3] - 3:21, 4:4, 9:11
**level** [1] - 14:17
**liability** [1] - 14:17
**license** [7] - 12:2, 12:3, 19:13, 19:17, 34:4, 34:9, 36:20
**licensed** [1] - 20:23
**licensing** [5] - 3:24, 11:12, 20:21, 21:3, 39:1
**life** [2] - 14:3, 31:16
**limit** [1] - 35:2
**limiting** [2] - 20:14, 41:10
**line** [3] - 6:10, 21:6, 38:13
**lines** [1] - 24:23
**lis** [1] - 6:21
**list** [2] - 12:23, 13:5, 15:23
**listed** [2] - 10:12, 10:22
**literally** [3] - 13:6, 14:22, 33:1
**live** [2] - 17:7, 17:8
**lived** [1] - 17:9
**lives** [4] - 4:3, 13:6, 14:22, 26:9
**LLC** [11] - 4:1, 6:13, 8:19, 23:10, 25:3, 26:8, 30:23, 30:24, 31:2, 31:5

**locally** [1] - 36:10
**look** [2] - 28:13, 35:18
**looking** [2] - 20:7, 20:20
**loses** [1] - 31:22
**loss** [1] - 16:24
**love** [1] - 42:3
**lying** [1] - 5:1

## M

**machinations** [1] - 6:10
**machine** [1] - 14:25
**MAGISTRATE** [1] - 1:10
**MAHAMAYAVI** [1] - 1:6
**mainstay** [1] - 18:4
**maintain** [1] - 19:18
**man** [1] - 24:23
**management** [1] - 9:13
**mandate** [1] - 16:13
**matter** [3] - 22:7, 42:4, 43:6
**matters** [1] - 23:14
**MBS** [2] - 19:4, 19:5
**MCDUFFIE** [1] - 2:3
**mean** [31] - 3:25, 17:5, 17:16, 17:25, 18:2, 18:17, 19:14, 22:2, 22:20, 22:21, 26:14, 27:8, 29:13, 29:23, 32:12, 32:13, 33:1, 33:3, 33:18, 35:6, 37:20, 37:23, 38:3, 38:19, 39:21, 39:25, 41:3, 41:4, 41:6, 41:10
**meat** [1] - 32:8
**meet** [1] - 13:11
**MEETING** [1] - 1:16
**member** [2] - 30:23, 31:5
**members** [1] - 15:10
**mention** [2] - 16:7, 20:20
**mentioned** [4] - 24:14, 34:22, 38:4, 38:12
**method** [1] - 10:2
**might** [2] - 31:23, 40:19
**mind** [2] - 7:4, 39:21
**minutes** [1] - 29:7
**misdemeanors** [2] - 28:5
**mistreatment** [1] -

15:25
**modification** [1] - 26:10
**Modification** [1] - 3:6
**MODIFICATION** [1] - 1:10
**modified** [1] - 4:13
**modify** [1] - 13:1
**money** [10] - 5:6, 5:7, 5:10, 7:21, 8:1, 16:23, 24:16, 25:5, 36:17, 42:3
**monitoring** [1] - 20:8
**month** [1] - 12:15
**Moorman** [1] - 29:22
**MOORMAN** [41] - 1:18, 1:19, 3:12, 11:3, 17:18, 17:20, 17:25, 18:11, 18:14, 18:20, 19:3, 19:12, 19:22, 20:4, 20:6, 20:18, 22:11, 23:5, 23:8, 26:12, 26:25, 30:10, 30:18, 30:22, 31:10, 32:20, 32:23, 36:7, 38:23, 39:20, 40:1, 40:9, 40:24, 41:19, 41:21, 42:5, 42:9, 42:11, 42:14, 42:17, 42:23
**most** [3] - 4:17, 23:1, 28:14
**Motion** [5] - 3:7, 27:17, 27:19, 27:22, 27:23
**motion** [6] - 3:9, 3:18, 4:24, 21:10, 27:20, 35:4
**motivation** [1] - 40:13
**move** [2] - 6:4, 26:4
**moved** [1] - 11:17
**moves** [2] - 22:25, 23:18
**moving** [1] - 20:14
**MR** [69] - 3:4, 3:12, 3:16, 3:17, 11:3, 17:18, 17:20, 17:25, 18:11, 18:14, 18:20, 18:21, 19:2, 19:3, 19:12, 19:22, 20:4, 20:6, 20:18, 22:11, 23:1, 23:5, 23:8, 24:9, 26:12, 26:14, 26:25, 28:22, 29:3, 30:10, 30:18, 30:22, 31:10, 32:20, 32:23, 33:8, 33:12, 33:20, 33:23, 34:3, 34:14, 34:21, 35:11, 35:20, 36:7,

36:12, 36:17, 37:1, 37:4, 37:9, 37:15, 37:25, 38:23, 39:4, 39:20, 40:1, 40:9, 40:19, 40:24, 41:3, 41:19, 41:21, 42:5, 42:9, 42:11, 42:12, 42:14, 42:17, 42:23
**multiple** [1] - 18:16
**must** [2] - 16:14, 21:2
**Myrtle** [17] - 3:23, 5:12, 5:13, 6:11, 7:24, 9:5, 11:12, 12:19, 13:4, 21:2, 27:14, 30:13, 30:24, 31:1, 31:2, 36:9, 41:18

## N

**name** [2] - 17:24, 18:10
**narrow** [1] - 37:14
**necessarily** [1] - 38:18
**need** [2] - 32:5
**needle** [1] - 22:25
**needs** [1] - 19:16
**nefarious** [4] - 23:11, 23:22, 23:24, 33:16
**negatively** [1] - 14:20
**negligence** [1] - 16:1
**never** [6] - 23:14, 23:19, 24:11, 26:25, 31:20, 36:12
**new** [2] - 12:3, 12:12
**next** [1] - 34:24
**NO** [1] - 1:3
**nobody** [1] - 33:17
**nonetheless** [1] - 8:16
**NORTH** [2] - 1:19, 1:22
**note** [2] - 24:13, 30:8
**noted** [2] - 5:7, 6:14
**notes** [2] - 8:24, 30:6
**nothing** [3] - 24:24, 33:17, 42:11
**notice** [1] - 42:5
**notified** [1] - 33:19, 34:6, 36:1
**notify** [3] - 14:10, 39:18, 42:7
**number** [2] - 7:20, 18:8
**numbers** [1] - 18:18

## O

**object** [1] - 41:3
**objection** [2] - 39:17, 40:24
**obligation** [2] - 4:22, 33:3
**obstacle** [1] - 8:17
**obstruct** [2] - 7:11, 25:6
**obstruction** [1] - 7:15
**obstructive** [1] - 38:9
**obviously** [6] - 3:9, 35:11, 37:4, 40:16, 41:8, 41:11
**occasion** [1] - 31:17
**occur** [1] - 5:2
**occurring** [1] - 27:16
**October** [3] - 9:1, 27:18, 27:22
**OF** [2] - 1:1, 1:3
**offer** [1] - 34:21
**offering** [1] - 31:3
**office** [2] - 23:4, 40:6
**OFFICE** [3] - 1:13, 1:16, 1:22
**officer** [2] - 28:18, 28:20, 31:10
**OFFICER** [1] - 43:5
**official** [1] - 43:5
**old** [1] - 31:13
**one** [18] - 5:19, 6:21, 7:13, 8:21, 8:23, 9:2, 10:18, 12:1, 12:2, 13:25, 14:24, 15:1, 15:5, 23:5, 26:8, 29:25, 30:17, 32:6
**one-hundred** [1] - 26:8
**ones** [1] - 10:16
**ongoing** [2] - 30:1, 30:9
**open** [2] - 26:22, 31:18
**operate** [1] - 39:7
**operation** [2] - 13:7, 24:17
**opinion** [1] - 11:8
**opportunity** [1] - 23:15
**opposed** [1] - 32:6
**option** [1] - 9:22
**Order** [9] - 21:21, 22:7, 25:13, 25:14, 29:16, 42:18, 42:19, 42:22
**order** [8] - 9:25, 10:16, 12:22, 21:8,

22:4, 29:13, 29:15, 35:2
**originally** [1] - 19:25
**otherwise** [1] - 35:9
**outright** [1] - 10:1
**outside** [1] - 41:13
**outstanding** [1] - 4:19
**overwhelmingly** [1] - 30:4
**owed** [1] - 16:21
**own** [4] - 11:12, 18:8, 28:21, 37:1
**owner** [3] - 4:5, 26:8, 33:3
**ownership** [12] - 4:6, 7:6, 8:11, 17:16, 21:1, 30:15, 30:25, 36:18, 37:6, 38:7, 42:2
**owns** [3] - 9:4, 30:23, 31:6

## P

**p.m** [1] - 42:25
**paid** [1] - 24:22
**paperclip** [1] - 39:25
**Park** [18] - 3:23, 4:9, 5:21, 6:12, 7:1, 7:6, 7:24, 10:8, 10:11, 10:21, 18:9, 18:22, 18:24, 18:25, 19:1, 40:21, 41:6, 41:18
**park** [11] - 3:25, 4:1, 5:19, 8:2, 8:5, 17:16, 17:22, 17:23, 17:25, 25:16, 36:25
**part** [13] - 7:22, 11:21, 15:12, 15:13, 16:1, 18:6, 19:2, 21:24, 28:15, 31:25, 33:23, 39:2, 41:23
**particular** [2] - 39:14, 41:2
**particularly** [1] - 28:23
**party** [1] - 26:7
**passed** [1] - 11:14
**past** [1] - 38:2
**paths** [2] - 34:22, 35:14
**pause** [1] - 30:21
**paying** [1] - 31:2
**pendens** [1] - 6:21
**pending** [2] - 12:1, 12:4
**people** [2] - 6:18, 34:23
**per** [2] - 33:15, 37:9
**percent** [2] - 26:8,

30:8
**percentage** [1] - 18:19
**percents** [1] - 18:22
**perfectly** [6] - 11:15, 13:17, 17:3, 19:7, 39:8
**perform** [2] - 15:11, 15:12
**permanently** [1] - 39:22
**permit** [3] - 12:5, 12:12, 20:23
**permits** [1] - 12:18
**permitting** [4] - 11:11, 20:21, 21:3, 39:1
**person** [4] - 4:2, 25:4, 29:20, 30:5
**phone** [1] - 27:15
**picture** [1] - 35:22
**pie** [1] - 18:19
**piece** [3] - 12:10, 18:5, 36:9
**pieces** [1] - 18:16
**place** [13] - 5:24, 6:11, 10:3, 30:2, 34:18, 35:6, 35:25, 36:1, 38:20, 38:22, 38:25, 40:10, 42:19
**plan** [6] - 24:7, 26:12, 26:14, 27:7, 33:6, 34:23
**plans** [1] - 9:10
**playing** [1] - 18:18
**pleadings** [1] - 11:13
**plus** [2] - 13:11, 23:20
**point** [16] - 4:9, 6:5, 6:10, 6:24, 6:25, 8:8, 8:13, 9:19, 9:21, 12:13, 21:22, 34:7, 34:10, 36:23, 39:9
**pointed** [1] - 16:20
**points** [1] - 24:10
**policy** [1] - 33:15
**pools** [7] - 6:18, 15:6, 15:8, 15:9, 15:10, 15:11
**posed** [1] - 15:16
**position** [6] - 6:16, 7:2, 23:25, 27:3, 38:11, 39:15
**possession** [2] - 4:22, 21:1
**possible** [1] - 16:15
**potential** [1] - 36:2
**potentially** [2] - 14:17, 41:7
**pounds** [3] - 13:10,

31:22, 32:8
**practical** [1] - 22:7
**prefer** [1] - 10:2
**prepared** [1] - 3:10
**presented** [1] - 5:8
**preservation** [1] - 34:17
**pretty** [1] - 9:22
**prevent** [6] - 10:1, 11:11, 12:17, 13:20, 21:10, 21:11
**preventing** [1] - 12:22
**prevents** [1] - 10:3
**primarily** [1] - 8:9
**primary** [6] - 7:7, 35:21, 35:24, 36:8, 36:10, 41:5
**privilege** [1] - 19:18
**probation** [1] - 40:6
**problem** [1] - 19:20
**problems** [2] - 15:5, 31:14
**proceedings** [4] - 10:5, 27:16, 34:24, 43:6
**process** [3] - 19:10, 21:2, 35:16
**profit** [1] - 42:3
**profound** [1] - 32:13
**prohibit** [1] - 27:6
**proper** [4] - 11:11, 29:11, 35:9, 37:24
**properly** [2] - 11:9, 29:18
**properties** [1] - 6:22
**property** [18] - 5:13, 5:14, 6:21, 8:9, 8:17, 8:23, 13:4, 13:21, 13:25, 14:1, 15:6, 17:9, 17:14, 19:4, 21:18, 24:6, 24:8, 33:9
**proposed** [1] - 40:12
**protect** [5] - 7:9, 8:12, 16:11, 16:16, 17:4
**protecting** [2] - 16:19, 38:1
**protectionism** [1] - 29:20
**provided** [1] - 40:6
**providing** [1] - 40:6
**provision** [4] - 29:21, 35:25, 37:7
**provisions** [1] - 29:14
**public** [8] - 15:14, 16:11, 16:16, 16:19, 17:4, 34:16, 35:8,

39:13
**publicity** [1] - 15:4
**purpose** [3] - 16:2, 16:9, 22:1
**purposes** [1] - 31:3
**pursuing** [1] - 35:16
**put** [10] - 6:11, 6:21, 14:13, 19:16, 23:25, 35:24, 35:25, 39:12, 39:17, 40:5

**Q**

**questions** [2] - 10:25, 30:17
**quick** [1] - 24:10
**quite** [5] - 16:17, 22:15, 23:23, 32:11, 33:3
**quote** [1] - 16:14

**R**

**reach** [1] - 8:15
**ready** [2] - 3:10, 3:11
**real** [12] - 18:16, 18:25, 23:2, 30:23, 36:3, 37:2, 40:19, 40:22, 40:25, 41:10, 41:14, 41:18
**reality** [1] - 9:10
**realize** [1] - 24:3
**really** [4] - 3:18, 16:5, 29:11
**reason** [6] - 4:12, 5:20, 7:10, 8:23, 8:24, 32:16
**reasonable** [1] - 10:20
**reasons** [4] - 6:19, 7:8, 7:16, 9:2
**receive** [1] - 20:23
**receives** [1] - 14:14
**recently** [2] - 3:21, 26:18
**recess** [2] - 29:7, 29:9
**recollection** [1] - 28:4, 40:21
**reconvene** [1] - 29:8
**record** [4] - 14:6, 14:8, 30:21, 40:7
**recording** [2] - 24:18, 43:5
**recordings** [1] - 24:13
**records** [2] - 4:20, 40:7
**red** [1] - 32:19
**refer** [1] - 40:19

**reference** [1] - 5:1
**references** [1] - 14:5
**regarding** [1] - 29:16
**regulation** [1] - 25:10
**regulations** [2] - 20:20, 37:10
**regulatory** [2] - 12:10, 38:25
**relate** [1] - 39:13
**related** [1] - 40:4
**relates** [6] - 3:8, 17:5, 22:17, 27:24, 39:16, 40:25
**relating** [1] - 11:14
**relationship** [1] - 26:9
**relatively** [1] - 37:13
**release** [1] - 6:23
**relevant** [5] - 4:23, 17:17, 19:11, 28:23, 34:19
**relied** [1] - 18:7
**reluctant** [2] - 31:7, 40:18
**remember** [2] - 14:7, 14:8
**renewal** [1] - 12:2, 12:12, 34:4
**renewed** [2] - 12:6, 19:13
**rent** [1] - 31:3
**REPORTER** [2] - 2:2, 2:2
**represented** [2] - 18:21, 36:8
**represents** [2] - 18:22, 30:8
**request** [1] - 40:7
**requested** [1] - 6:3
**require** [2] - 14:9, 36:5
**required** [1] - 34:1
**requirement** [2] - 14:14, 42:6
**requires** [1] - 36:20
**respectfully** [2] - 22:12, 35:12
**respond** [1] - 11:4
**response** [3] - 4:11, 16:8, 16:20
**responsibility** [1] - 33:5
**responsible** [3] - 15:21, 32:7, 33:4
**restitution** [1] - 16:21
**restraining** [3] - 29:13, 29:15, 34:25
**Restraining** [1] -

29:16
**restricting** [1] - 17:1
**restriction** [1] - 9:15
**restrictions** [1] - 11:18
**restrictive** [1] - 16:15
**retain** [3] - 30:15, 30:24, 30:25
**returned** [2] - 25:14, 25:15
**Reuben** [1] - 31:16
**review** [2] - 28:13, 29:6
**reviewed** [1] - 14:7
**revisit** [1] - 6:7
**revocation** [1] - 5:9
**ridiculous** [1] - 17:12
**rise** [1] - 3:2
**risk** [16] - 8:25, 9:2, 9:3, 9:17, 11:5, 15:16, 17:12, 17:18, 19:16, 34:16, 35:7, 35:12, 35:15, 35:18, 37:21, 39:16
**road** [1] - 41:7
**ROGERS** [1] - 1:9
**role** [1] - 9:12
**routinely** [1] - 7:8
**RPR** [1] - 2:2
**run** [1] - 13:9
**running** [1] - 32:2
**rYAN** [1] - 1:21
**RYAN** [1] - 1:22

**S**

**s/Debra** [1] - 43:10
**safari** [1] - 14:21
**Safari** [27] - 3:23, 4:9, 5:11, 5:12, 5:13, 6:12, 7:1, 7:6, 7:24, 10:8, 10:11, 10:21, 11:12, 12:19, 13:4, 14:23, 15:17, 21:2, 21:23, 27:14, 30:24, 31:1, 31:2, 31:4, 36:9, 41:5, 41:18
**Safari's** [1] - 13:23
**safe** [1] - 25:15
**safety** [1] - 39:13
**sake** [1] - 19:10
**sale** [7] - 5:23, 36:16, 40:2, 40:16, 41:17, 41:22, 41:25
**salt** [1] - 24:24
**satisfied** [1] - 21:6
**saw** [1] - 32:13
**SC** [6] - 1:3, 1:14, 1:17, 1:20, 1:23, 2:3
**schedule** [1] - 12:7

**scheduled** [1] - 12:15

**scope** [3] - 5:2, 37:14, 41:13

**seamlessly** [2] - 12:5, 12:6

**search** [4] - 27:25, 28:9, 28:10, 28:16

**second** [2] - 8:24, 11:5

**secondly** [1] - 6:14

**see** [2] - 3:13, 26:2

**seed** [1] - 6:23

**seek** [4] - 9:25, 10:1, 10:7, 34:25

**seeking** [4] - 13:15, 14:19, 38:5, 38:7

**seeks** [2] - 7:5, 12:21, 17:2

**seem** [1] - 15:7

**seize** [7] - 8:4, 8:6, 8:8, 8:22, 15:18, 15:19, 16:4

**seized** [1] - 16:23

**seizure** [4] - 7:22, 8:4, 9:24, 10:2

**sell** [5] - 3:23, 7:1, 24:22, 32:25, 37:5

**selling** [3] - 3:25, 26:6, 26:7

**sense** [2] - 24:7, 32:17

**SEPTEMBER** [1] - 1:4

**September** [1] - 43:10

**serious** [2] - 28:3, 31:14

**set** [7] - 3:8, 7:13, 8:14, 8:19, 9:23, 11:22, 19:25

**setting** [1] - 16:10

**several** [1] - 5:17

**share** [2] - 31:11

**shared** [1] - 36:16

**SHOEMAKE** [16] - 1:12, 3:4, 3:17, 24:9, 26:14, 28:22, 29:3, 33:23, 34:14, 34:21, 35:11, 35:20, 37:15, 37:25, 41:3, 42:12

**Shoemake** [16] - 3:3, 13:1, 14:13, 15:17, 15:20, 15:21, 16:4, 16:17, 17:6, 21:16, 23:8, 23:21, 28:7, 37:3, 37:13, 41:1

**short** [1] - 29:9

**shut** [2] - 34:4, 34:9

**side** [1] - 38:25

**significant** [9] - 17:24, 18:9, 20:19, 20:24, 21:4, 23:13, 30:1, 40:22

**sits** [3] - 19:1, 23:20, 30:24

**situation** [1] - 30:19

**sleep** [1] - 31:19

**sleeping** [1] - 24:2

**slippery** [3] - 18:20, 19:5, 19:19

**slope** [3] - 18:20, 19:6, 19:19

**slow** [2] - 24:4, 32:5

**small** [1] - 36:9

**sold** [1] - 36:4

**sole** [2] - 30:23, 31:5

**solely** [1] - 11:10

**solution** [3] - 38:17, 38:19, 38:20

**someone** [1] - 26:8

**sometimes** [2] - 32:4, 39:12

**somewhere** [2] - 14:1, 27:4

**son** [1] - 15:10

**sort** [8] - 4:12, 5:25, 6:1, 8:7, 22:24, 30:11, 31:20, 40:11

**sound** [1] - 43:5

**SOUTH** [2] - 1:1, 2:3

**speaking** [2] - 12:9, 38:13

**Species** [2] - 10:9, 10:22

**species** [6] - 5:18, 12:23, 13:5, 15:23, 21:12, 21:16

**specific** [3] - 10:10, 10:12, 10:23

**specifically** [9] - 5:7, 5:19, 6:3, 9:9, 10:8, 14:7, 14:8, 25:10, 30:12

**spin** [1] - 19:15

**spots** [1] - 6:23

**squarely** [1] - 9:23

**staff** [1] - 16:1

**stake** [1] - 12:21

**standpoint** [2] - 20:25, 31:5

**stands** [2] - 11:8, 16:22

**start** [1] - 11:5

**starts** [1] - 41:8

**state** [1] - 24:22

**statement** [1] - 40:20

**States** [2] - 3:5, 11:7

**STATES** [6] - 1:1, 1:3, 1:10, 1:13, 1:16,

2:2

**statute** [2] - 7:12, 26:5

**staying** [1] - 33:9

**stealing** [1] - 28:21

**STENOTYPE/ COMPUTER** [1] - 2:5

**STENOTYPE/ COMPUTER-AIDED** [1] - 2:5

**step** [2] - 5:24, 8:22

**still** [9] - 5:21, 8:15, 8:25, 18:15, 28:12, 31:3, 31:4, 35:5, 37:1

**stop** [2] - 34:9, 38:18

**stopping** [1] - 20:14

**strawman** [1] - 4:18

**STREET** [5] - 1:13, 1:16, 1:19, 1:22, 2:3

**strictly** [1] - 38:13

**subject** [9] - 7:22, 21:14, 24:20, 25:16, 25:17, 26:16, 26:23, 27:24, 33:11

**subpoena** [1] - 4:19

**substantial** [1] - 40:17

**substitute** [3] - 7:19, 7:23, 41:7

**successful** [2] - 13:7, 13:13

**successfully** [1] - 13:10

**sudden** [1] - 17:11

**suggestion** [1] - 34:22

**Sugriva** [7] - 4:1, 12:3, 12:10, 12:13, 20:23, 20:25, 31:1

**SUITE** [2] - 1:14, 1:17

**summons** [1] - 23:16

**support** [1] - 13:18

**supposed** [2] - 12:14, 38:22

**Suppress** [4] - 27:17, 27:19, 27:23

**survival** [1] - 33:4

**suspect** [1] - 10:13

**swabs** [1] - 22:3

**swap** [1] - 6:21

**swim** [1] - 15:10

**sworn** [1] - 28:17

---

**T**

**talks** [2] - 15:17, 16:18

**team** [4] - 13:8, 13:9, 15:10, 27:20

**Temporary** [1] - 29:16

**ten** [1] - 42:7

**tenuous** [4] - 14:24, 15:1, 19:21, 32:25

**term** [2] - 39:23, 40:18

**terms** [3] - 24:12, 25:23, 40:17

**Text** [2] - 42:18, 42:21

**THE** [60] - 1:1, 1:1, 1:9, 1:12, 1:18, 3:3, 3:11, 3:13, 11:2, 17:15, 17:19, 17:22, 18:6, 18:12, 18:17, 18:24, 19:9, 19:21, 20:3, 20:5, 20:16, 22:8, 23:7, 29:2, 29:5, 29:10, 30:16, 31:7, 32:15, 32:21, 33:10, 33:18, 33:22, 34:12, 34:15, 35:5, 35:18, 35:23, 36:15, 36:24, 37:3, 37:7, 37:12, 37:19, 38:14, 39:12, 39:24, 40:8, 40:16, 40:20, 41:1, 41:16, 41:20, 41:24, 42:7, 42:10, 42:13, 42:16, 42:19, 42:24

**transferred** [8] - 8:21, 19:11, 20:22, 21:5, 25:19, 25:20, 31:1, 33:19

**transferring** [5] - 10:17, 26:22, 36:18, 37:6, 38:4

**transfers** [2] - 17:15, 20:14

**transpiring** [1] - 38:15

**tremendous** [2] - 32:9, 32:14

**trial** [1] - 9:1

**tried** [1] - 28:8

**tries** [1] - 23:21

**trouble** [2] - 23:15, 41:14

**try** [5] - 11:11, 12:7, 19:16, 22:2, 31:19

**trying** [7] - 13:1, 17:11, 23:24, 25:3, 29:15, 35:23, 41:24

**tuned** [1] - 14:25

**turn** [4] - 14:22, 15:8, 17:12, 23:15

**turning** [1] - 15:6

**turnover** [1] - 4:20

**two** [8] - 5:25, 10:12, 11:25, 20:16, 22:8, 22:15, 24:15, 26:18

**type** [2] - 10:12, 17:13

**therein** [1] - 7:7

**thick** [1] - 16:18

**thinking** [5] - 39:14, 39:24, 40:10, 40:12, 40:17

**thinks** [1] - 21:19

**third** [1] - 26:7

**third-party** [1] - 26:7

**THOMAS** [1] - 1:9

**thousand** [2] - 13:10, 32:8

**three** [2] - 7:7, 17:9

**tie** [1] - 31:4

**tied** [1] - 5:12

**ties** [5] - 4:3, 9:8, 16:13, 22:22, 26:3

**tigers** [1] - 15:11

**timetable** [1] - 39:2

**timing** [1] - 38:21

**tired** [2] - 24:3, 32:1

**titled** [1] - 11:9

**today** [2] - 7:5, 11:9

**tour** [4] - 15:12, 15:13, 15:14

**tours** [1] - 15:11

**track** [1] - 27:4

**trafficked** [2] - 8:3, 10:19

**trafficking** [3] - 5:18,

6:6, 25:1

**transaction** [1] - 19:24

**transcript** [1] - 43:4

**TRANSCRIPTION** [1] - 2:5

**transfer** [46] - 6:11, 7:6, 8:11, 8:15, 9:16, 10:1, 10:8, 10:11, 10:21, 10:22, 10:24, 12:22, 12:23, 13:20, 13:24, 13:25, 18:25, 19:4, 21:1, 21:7, 21:11, 22:9, 22:17, 22:18, 23:1, 23:23, 23:24, 26:21, 27:1, 27:4, 29:23, 33:10, 34:9, 34:19, 35:2, 36:2, 38:7, 38:21, 38:25, 39:8, 39:18, 41:11, 41:17, 41:23, 42:1

---

**U**

**unanswered** [1] - 28:24

**uncertain** [1] - 39:3
**under** [8] - 9:12, 10:9, 16:10, 20:21, 20:22, 25:13, 28:10, 28:18
**underestimates** [1] - 22:15
**understates** [1] - 22:16
**undertaking** [1] - 32:25
**unenforceable** [1] - 27:9
**unequivocally** [1] - 12:11
**unique** [1] - 32:24
**United** [2] - 3:5, 11:7
**UNITED** [6] - 1:1, 1:3, 1:10, 1:13, 1:16, 2:2
**unless** [4] - 10:24, 20:23, 21:5, 27:19
**unloading** [2] - 32:18, 33:2
**unnecessary** [1] - 8:10
**up** [2] - 8:19, 32:3
**USDA** [27] - 3:22, 3:24, 4:19, 4:21, 5:23, 11:9, 11:10, 11:14, 12:1, 12:4, 12:5, 12:7, 12:8, 12:11, 20:21, 21:2, 21:6, 23:4, 33:15, 33:21, 33:25, 36:13, 36:19, 37:9, 39:6, 39:9
**utterly** [3] - 12:20, 17:6, 20:1

**V**

**vacuum** [1] - 15:7
**value** [2] - 40:22, 40:23
**values** [1] - 30:7
**vanish** [1] - 9:9
**vendors** [1] - 15:3
**verbal** [1] - 42:19
**verbiage** [1] - 42:21
**verify** [1] - 24:21
**VERSUS** [1] - 1:5
**versus** [5] - 3:5, 11:7, 11:9, 20:7, 22:9
**vet** [2] - 13:11, 14:12
**victims** [1] - 16:20
**view** [2] - 37:16, 37:20
**violate** [1] - 37:8
**violation** [4] - 7:10, 7:11, 7:14, 40:3

**violations** [4] - 5:17, 11:19, 20:9, 25:22
**Virginia** [9] - 9:1, 24:25, 27:10, 27:12, 27:15, 27:18, 27:21, 28:10, 28:11

**W**

**waiting** [1] - 28:12
**wall** [1] - 28:8
**wants** [6] - 10:23, 14:3, 19:17, 20:12, 24:6, 30:11
**warrant** [2] - 28:9, 28:16
**warrants** [1] - 15:14
**watch** [1] - 27:16
**week** [2] - 27:16, 34:24
**weeks** [2] - 3:8, 26:18
**weigh** [1] - 21:20
**weighing** [1] - 22:19
**well-being** [3] - 14:21, 15:16, 15:22
**whatsoever** [3] - 12:13, 23:15, 42:2
**white** [1] - 9:11
**whole** [10] - 3:19, 18:19, 23:3, 25:13, 34:4, 34:7, 34:10, 34:11, 36:22
**widely** [1] - 23:19
**wildlife** [2] - 6:6, 24:25
**word** [1] - 32:15
**worth** [1] - 32:16
**write** [1] - 42:20
**written** [1] - 21:13
**Written** [1] - 42:17

**Y**

**y'all** [1] - 42:13
**year** [1] - 12:6
**years** [4] - 24:2, 24:15, 31:13, 32:2
**York** [4] - 4:4, 6:12, 9:11
**York's** [2] - 4:7, 9:7
**yourself** [2] - 35:21, 35:22

**Z**

**zoo** [2] - 19:2, 26:7