IN THE DISTRICT COURT OF THE UNITED STATES
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO.: 4:22-cr-580-JD |
| | ) | |
| vs. | ) | |
| | ) | 18 U.S.C. § 371 |
| **BHAGAVAN MAHAMAYAVI ANTLE,** | ) | 18 U.S.C. § 981(a)(1)(C) |
| a/k/a **KEVIN ANTLE,** | ) | 28 U.S.C. § 2461(c) |
| a/k/a **DOC ANTLE,** | ) | |
| | ) | **INFORMATION** |
| | ) | |

## **BACKGROUND**

At all times material to this Information:

1.   **DEFENDANT BHAGAVAN MAHAMAYAVI ANTLE, a/k/a KEVIN ANTLE, a/k/a DOC ANTLE (**hereinafter, "**DEFENDANT ANTLE**"), resided in the District of South Carolina and was the owner and operator of The Institute for Greatly Endangered and Rare Species (T.I.G.E.R.S.), also known as the Myrtle Beach Safari.

2.   The Myrtle Beach Safari was a for-profit 50-acre wildlife tropical preserve located in Myrtle Beach, South Carolina. The Myrtle Beach Safari offered tours and private encounters with exotic wildlife.

3.   **DEFENDANT ANTLE** is the Director of the Rare Species Fund, a nonprofit organization registered in Myrtle Beach, South Carolina.

4.   The Lacey Act, Title 16, United States Code, Section 3371 *et seq.*, made it unlawful for any person to knowingly transport, sell, receive, acquire, or purchase, in interstate commerce, any wildlife, when the person knew that said wildlife was taken, possessed, transported, or sold in violation of federal laws or regulations. 16 U.S.C. §§ 3372(a)(1), 3373(d).

5. The Lacey Act also prohibited any person from making or submitting any false record, account, label for or identification of wildlife that had been or was intended to be transported in interstate or foreign commerce. 16 U.S.C. § 3372(d).

6. The Endangered Species Act (ESA), Title 16, United States Code, Section 1531 *et seq.*, authorized the United States Fish and Wildlife Service (USFWS) to issue regulations listing certain species of wildlife as "endangered."

7. The ESA prohibited any person subject to the jurisdiction of the United States from engaging in the unpermitted delivery, receipt, carrying, transporting, or shipping, in interstate or foreign commerce in the course of a commercial activity, of wildlife listed as endangered. 16 U.S.C. §§ 1538(a)(1)(E), 1540(b)(1).

8. The ESA further prohibited any person subject to the jurisdiction of the United States from engaging in the unpermitted interstate or international sale, or offer of sale, of wildlife listed as endangered. 16 U.S.C. §§ 1538(a)(1)(F), 1540(b)(1).

9. The ESA established a registration and permitting exception to the prohibition against interstate movement or sale of captive-bred endangered species. In order to qualify for the exception, an entity had to submit an application to USFWS for each transaction. The USFWS then published the application for public notice and comment and made a determination whether the applicant had sufficiently shown that the prohibited activity would adequately enhance the survival of the affected wildlife. 50 C.F.R. § 17.21(g).

10. The chimpanzee (*Pan troglodytes*) is a highly social species of great ape native to tropical regions of Africa. Wild chimpanzees were listed as threatened under the ESA in 1976. 41 Fed. Reg. 45,990 (October 19, 1976). Due to continued population loss, wild chimpanzees were listed as endangered under the ESA in 1990. 55 Fed. Reg. 9,129 (March 12, 1990). All

chimpanzees, wild or captive, wherever found, were listed as endangered under the ESA in 2015, and continued to be listed as endangered at all times relevant to this Information. 50 C.F.R. § 1711(h) (2022); 80 Fed. Reg. 34,500 (June 16, 2015).

11.     The cheetah (*Acinonyx jubatus*) is a species of large cat native to Africa. All cheetahs, wherever found, were listed as endangered under the ESA in 1972 and continued to be listed as endangered at all times relevant to this Information. 50 C.F.R. § 1711(h) (2022); 37 Fed. Reg. 6,476 (March 30, 1972).

12.     The tiger, (*Panthera tigris*) is native to the Asian continent and is the largest species of cat. All tigers, including subspecies, were listed as endangered under the ESA in 1970, and continued to be listed as endangered at all times relevant to this Information. 50 C.F.R. § 1711(h) (2022); 35 Fed. Reg. 8,491 (June 2, 1970).

## COUNT 1
### (Conspiracy to Violate the Lacey Act)

**THE UNITED STATES ATTORNEY CHARGES:**

13.     Paragraphs 1 through 12 of this Information are incorporated herein by reference.

14.     Beginning no later than September 30, 2018, and continuing to on or about May 24, 2020, in the District of South Carolina and elsewhere, **DEFENDANT ANTLE** did knowingly and willfully conspire, confederate, and agree with others, known and unknown, to commit offenses against the United States, that is:

  a.     To violate the Lacey Act by knowingly engaging in conduct involving the sale and purchase of wildlife, with a market value in excess of $350, and knowingly transporting, selling, receiving, acquiring, and purchasing said wildlife in interstate commerce, knowing that the wildlife was possessed, transported, and sold in violation of and in a manner unlawful under the

        Endangered Species Act, in violation of Title 16, United States Code, Sections 3372(a)(2)(A) and 3373(d)(1)(B); and

    b.    To violate the Lacey Act by knowingly making, and causing to be made, false records, accounts, labels, and identifications of wildlife with a market value greater than $350, while engaging in conduct involving the interstate sale and purchase of said wildlife, in violation of Title 16, United States Code, Sections 3372(d)(2) and 3373(d)(3)(A)(ii).

### MANNER AND MEANS OF THE CONSPIRACY

15.    It was a part of the conspiracy that **DEFENDANT ANTLE** and his co-conspirators, both known and unknown to the United States Attorney, and others:

    a.    Did, and did cause others to, designate funds **DEFENDANT ANTLE** received as payment for the commercial sale of endangered species as "donations" to a nonprofit fund controlled by **DEFENDANT ANTLE**;

    b.    **D**id, and did cause others to, use cash payments to hide the commercial purchase and sale of endangered species and make transactions appear to be donations;

    c.    Did, and did cause others to, create, retain, and use paperwork falsely showing the transfer of endangered species entirely within one state, when the endangered species were being sold and transported in interstate commerce.

OVERT ACTS

16.　In furtherance of the conspiracy, and to effect the objects thereof, there was committed by at least one of the co-conspirators in the District of South Carolina at least one of the following overt acts, among others:

 a. On or about September 30, 2018, **DEFENDANT ANTLE** directed and otherwise caused Person A, a person known to the United States Attorney, to travel to Florida to pay approximately $35,000 for two juvenile cheetah cubs. The cheetah cubs were then transported from Florida to South Carolina using paperwork showing a transfer entirely within Florida.

 b. On or about January 25, 2019, **DEFENDANT ANTLE** sold two juvenile lion cubs to Organization B in exchange $15,000. The $15,000 was paid to the Rare Species Fund. Paperwork provided with the lion cubs showed a transfer entirely within Florida, though the lion cubs were transferred from Florida to Alabama.

 c. Between on or about March 25, 2019, and on or about May 15, 2019, Person C, a person known to the United States Attorney, made approximately $10,000 in payments to the Rare Species Fund, in exchange for two tigers that had been transported from South Carolina to Montana on or about March 30, 2019.

 d. On or about May 24, 2020, Person D, a person known to the United States Attorney, transported a juvenile chimpanzee from Florida to the Myrtle Beach Safari. **DEFENDANT ANTLE** paid approximately $200,000 in

cash and check in exchange for the chimpanzee. The paperwork associated with the sale declared a transfer entirely within the state of Florida.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
### (Conspiracy to Commit Money Laundering)

**THE UNITED STATES ATTORNEY CHARGES:**

17.    Paragraphs 1 through 12 of this Information are incorporated herein by reference.

### THE CONSPIRACY

18.    From on or about February 2022 and continuing through at least April 2022, in the District of South Carolina, **DEFENDANT ANTLE** did knowingly and willfully conspire, confederate, and agree with others, known and unknown, to commit offenses against the United States, that is, to promote the carrying on of specified unlawful activities, and with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activities, to knowingly and willfully conduct and attempt to conduct financial transactions affecting interstate commerce, each of which involved property represented to be the proceeds of specified unlawful activities, and property used to conduct and facilitate specified unlawful activities, in violation of Title 18, United States Code, Section 555, and Title 8, United States Code, Section 1324, and that while conducting and attempting to conduct such financial transaction, knew that the property involved in the financial transaction was represented to be the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and (B).

### MANNER AND MEANS OF THE CONSPIRACY

19.    It was a part of the conspiracy that **DEFENDANT ANTLE** and his co-conspirators,

both known and unknown to the United States Attorney, and others, did:

    a.    Form an agreement to conduct financial transactions with a confidential source (CS).

    b.    The proceeds involved in the financial transactions were represented by the CS to **DEFENDANT ANTLE** and his coconspirators to have come from a specified unlawful activity, which constituted a violation of Title 18, United States Code, Section 555 and/or Title 8, United States Code, Section 1324.

    c.    The financial transactions **DEFENDANT ANTLE** and his coconspirators conducted with the CS were conducted both for the purpose of promoting the aforementioned specified unlawful activities and to conceal the source of the cash proceeds.

    d.    **DEFENDANT ANTLE** and his conspirators agreed with CS that they would "clean" the CS's cash proceeds by providing CS checks that appeared to be for construction-related work, although no such work had been performed in exchange for those specific checks.

## OVERT ACTS

20.    In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the District of South Carolina:

    a.    On or about February 8, 2022, **DEFENDANT ANTLE** and his co-conspirators, both known and unknown, did receive U.S. Currency in the amount of $270,000.00 and gave the CS a check for $229,500.00 drawn on a bank account controlled by one of **DEFENDANT ANTLE's** known co-conspirators.

      b.      On or about March 24, 2022, **DEFENDANT ANTLE** and his co-conspirators, both known and unknown, did receive U.S. Currency in the amount of $115,000.00 and gave CS a check for $100,000.00 drawn on a bank account controlled by one of **DEFENDANT ANTLE's** known coconspirators.

      c.      On or about April 26, 2022, **DEFENDANT ANTLE** and his co-conspirators, both known and unknown, did receive U.S. Currency in the amount of $120,000.00 and gave CS a check for $ 102,000.00 drawn on a bank account controlled by **DEFENDANT ANTLE**.

All in violation of Title 18, United States Code, Section 371.

# FORFEITURE

CONSPIRACY TO COMMIT MONEY LAUNDERING:

Upon conviction for violation of Title 18, United States Code, Section 371 (conspiracy to violate 18 U.S.C. § 1956) as charged in this Information, the Defendant, **BHAGAVAN MAHAMAYAVI ANTLE, a/k/a KEVIN ANTLE, a/k/a DOC ANTLE**, shall forfeit to the United States any property, real or personal, which constitutes, is traceable, or is derived from proceeds the Defendant obtained, directly or indirectly, as the result of such violation.

PROPERTY:

Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), the property subject to forfeiture includes, but is not limited to, the following:

    A.    Cash Proceeds / Forfeiture Judgment:

        A sum of money equal to all property the Defendant obtained as result of the conspiracy offense charged in this Information, and all interest and proceeds traceable thereto as a result of his violations of 18 U.S.C. §§ 371 and 1956.

    B.    Bank Accounts:

        (1)    $7,137.82 in funds from Bank of America, bank account #xxxx8371 in the name of South Carolina Conservation Farm, LLC dba Myrtle Beach Safari
Asset ID: 22-FBI-004643

        (2)    $44,533.38 in funds from Bank of America, bank account #xxxx6132 in the name of Bhagavan Antle Sole Prop dba Preservation Station T.I.G.E.R.S
Asset ID: 22-FBI-004644

        (3)    $80,581.59 in funds from Bank of America, bank account #xxxx9802 in the name of South Carolina Conservation Farm, LLC dba Myrtle Beach Safari
Asset ID: 22-FBI-004645

  (4) $64,986.34 in funds from Bank of America, bank account #xxxx5409 in the name of Preservation Stations, Bhagavan Antle; TIGERS
Asset ID: 22-FBI-004646

<u>WILDLIFE/CHIMPANZEES</u>:

  (1) Approximately 4-year-old male chimpanzee
Born June/July 2019
Name: "Angada"

  (2) Approximately 3-year-old female chimpanzee
Born March/April 2020
Name: "Tara"

  (3) Approximately 1-year-old female chimpanzee
Born March/April 2022
Name: "Vanera"

<u>SUBSTITUTION OF ASSETS</u>:

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the Defendant:

  (a) cannot be located upon the exercise of due diligence;
  (b) has been transferred or sold to, or deposited with, a third person;
  (c) has been placed beyond the jurisdiction of the Court;
  (d) has been substantially diminished in value; or
  (e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(l), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the Defendant up to the value of the forfeitable property;

Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

| | |
|---|---|
| ADAIR F. BOROUGHS<br>UNITED STATES ATTORNEY | TODD KIM<br>ASSISTANT ATTORNEY GENERAL<br>ENVIRONMENT AND NATURAL<br>RESOURCES DIVISION |
| By: /s/Amy Bower_____<br>Amy F. Bower (#11784)<br>Assistant U.S. Attorney<br>151 Meeting Street, Suite 200<br>Charleston, South Carolina 29401<br>Tel.:   (843) 727-4381<br>Email: Amy.Bower@usdoj.gov | By: /s/ Patrick Duggan_____<br>Patrick M. Duggan<br>Senior Trial Attorney<br>Environmental Crimes Section<br>U.S. Department of Justice<br>Tel.: (202) 305-0366<br>Fax.: (202) 514-8865<br>Email: Patrick.Duggan@usdoj.gov |